## Frick & Lindsey Company v. Holbrook & Parks, etc.

(Decided March 14, 1924.)

### Appeal from Ohio Circuit Court.

1. Venue—Action Against Corporation Seller for Breach of Warranty Held Properly Brought in County to Which Goods Shipped.— Corporation seller, shipping goods from its principal place of

business to buyer in another county, the goods to be delivered to itself at destination, held not to intend to pass title to the goods until draft attached to bill of lading was paid at a bank at destination, though the bank had guaranteed payment and consignor had indorsed the bill of lading, and an action for breach of warranty was properly brought at destination of shipment, under Civil Code of Practice, section 72, providing for actions against corporations on contract either at its place of business or in county in which contract is made or to be performed.

2.  Corporations—Authority of Agents to Make Warranty Held Sufficiently Pleaded and Proved.—Where plaintiff's petition alleged that they bought wire from defendant corporation and that, at the time, the defendant made the warranty sued on, and evidence showed that one of the men with whom plaintiff talked over the 'phone was the local manager of defendant's store and that the other was a salesman in that store, a contention that the authority of defendant's agents to make the warranty sued on was not pleaded and proved was without merit.

3.  Corporations—Manager May Warrant Goods Sold in Ordinary Course of Business.—The manager of a business of a corporation has authority to bind it by warranty in the sale of goods ordinarily handled in the course of the business.

4.  Sales—Remedies for Breach of Warranty Stated.—Where there is a breach of warranty in the purchase of personal property, the warrantee has two remedies: He may keep the property and sue for damages, or he may tender back the property to the seller and institute his action for a rescission of the contract.

A. D. KIRK, R. E. L. SIMMERMAN, CLARENCE BARTLETT and D. C. JENNINGS for appellant.

HEAVRIN & MARTIN for appellees.

OPINION OF THE COURT BY TURNER, COMMISSIONER— Affirming.

Appellant is a foreign corporation engaged in the selling of oil well supplies, and in 1920 maintained three such concerns in this state. Its principal place of business was Winchester, where it had an agent designated as such for service of process.

Appellees, Holbrook and Parks, were partners and engaged in Ohio county, Kentucky, in operating oil wells and developing oil lands. They each lived in that county.

In the fall of 1920, they were engaged in the cleaning out of some old oil wells in that county with a view to further operating and pumping them. It became nec-

essary for them, in the operation of this work, to have a wire line or cable to attach to their machinery. The wells upon which they were working were about 1800 feet deep, and they needed about 2000 or 2500 feet of such line. Having failed to procure the wire line, in November, 1920, they either called appellant's office in Winchester or were called by some one at that office over the 'phone, and were told that appellant had such a wire line at its Winchester store, but that it was 4000 feet long and would not be cut. In a second conversation over the 'phone appellees agreed to take the whole 4000 feet, and Rowan Holbrook, father of appellee, H. T. Holbrook, who was an officer of a bank at Hartford, guaranteed, on behalf of the bank, the payment for the shipment, and thereafter wrote a letter to appellant to that effect.

On November 16th appellant shipped the goods from Winchester over the L. & N. railroad consigned to itself (appellant) at Hartford, Ky., and at the same time sent the bill of lading to the bank at Hartford, with a draft attached for the amount of the bill. The draft was paid by appellees, the bill of lading turned over to them by the bank, and they received the goods on November 29th. They paid the freight on the shipment, had the wire carried to their wells some miles from Hartford, and there, as claimed by them, they had the same adjusted to their machinery by experienced men, and undertook to use it.

In this action for damages by the purchasers it is alleged that when they attempted to use the wire line, and had used it for only a short time, they discovered it was rotten and had broken into numerous pieces and was absolutely worthless, and they pray for a judgment for the purchase price because of the breach of a warranty alleged to have been made by the seller at the time. Plaintiffs also sought to recover the freight paid, the expense of transportation from Hartford to the wells, and the expense of adjusting the wire to their machinery.

On the trial there was a verdict for the plaintiffs for each of these items in full, and from a judgment on that verdict this appeal is prosecuted.

We are met at the outset with the contention that the venue of this action was in Clark county, and that the Ohio circuit court had no jurisdiction.

Section 72 of our Civil Code, with certain exceptions not here involved, provides:

"An action against a corporation which has an office or place of business in this state, or a chief officer or agent residing in this state, must be brought in the county in which such office or place of business is situated or in which such officer or agent resides; or, if it be upon a contract, in the above named county, or in the county in which the contract is made or to be performed."

The appellant, when it mailed the bill of lading with the draft attached to the bank at Hartford, had its unqualified endorsement on the bill of lading, and its contention is that although the goods were consigned by the shipper to itself at the place of delivery, still such an endorsement manifested upon its part an intention to part absolutely with the title to the goods, and that therefore when delivered by them to the carrier at Winchester the contract was closed, the carrier at the time becoming the agent of the purchaser. If the appellees had been the consignees in the bill of lading such delivery by the consignor to the carrier at Winchester would have been a delivery to the agent of the consignee, but when the consignor delivers to a carrier goods to be delivered to the consignor himself at another place, ordinarily, he does not part with title to nor control over the shipment.

The argument for appellant here is that it had the guarantee of the bank through its officer, Holbrook, that its draft for the purchase price of the goods would be paid, and that therefore when it made its endorsement on the bill of lading and sent it to the bank it parted title with the property upon delivery to the carrier. But we think the facts in this case must be given a different interpretation, for if appellant had intended to part with title to the goods or control over them and rely wholly upon its guaranty, it would not have shipped them to itself; and the further fact that it had a guaranty from the bank to pay for the shipment and sent the bill of lading endorsed to the bank, thereby making that institution its agent, with a stipulation in the bill of lading that:

"The surrender of this original order bill of lading properly endorsed shall be required before the delivery of the property,"

is convincing that it never intended its agent to part with the title to nor control over the goods until the draft attached to the bill of lading was paid. Not only so, it is shown by the evidence heard by the lower court on this motion it was the understanding between the parties over the telephone, including the officer of the bank, that the bill of lading should be attached to the draft and sent to the bank, and in substance that the transaction should be closed thereafter when the draft was paid and the property was delivered to the purchasers. At no time until the payment of the draft and delivery of the bill of lading did appellant, or its agent, the bank of Hartford, relinquish title to or control over the goods, and it seems to follow from this that the final delivery of the goods which constituted a consummation of the contract, took place in Ohio county.

As said in Swartz & Co. v. Woldert Grocery Co., 151 Ky. 748:

"The general rule is that where there is a consignment of goods to the seller, his agent, or order, and the bill of lading is forwarded to the seller's agent, with draft attached, to be delivered to the buyer on payment, the seller thereby manifests an intention to preserve his property in the goods, and the property does not pass until the draft is paid."

Other authorities are Kentucky Refining Co. v. Globe Refining Co., 104 Ky. 559; Kentucky Motor Car Co. v. Darenkamp, 162 Ky. 219.

Every fact and circumstance goes to show that notwithstanding the guaranty by the bank of Hartford, appellant by consigning the goods to itself and sending the bill of lading to its agent intended to retain the title to and control over the same until the draft was paid. That being true the title did not pass until the payment of the draft and delivery of the bill of lading, and it is apparent it was the understanding between the parties these things were to be performed in Ohio county. No other reasonable interpretation of this transaction can be given, and we are of the opinion the lower court properly ruled it had jurisdiction.

The issues made by the pleadings were a denial of any warranty, a denial of the worthlessness or unfit condition of the wire line, and an affirmative plea by defendant that the plaintiffs in attaching and adjusting

the wire line to their drilling machinery had done so in an improper manner and used a certain socket and adjusted the same to the socket in such way as to cause the line to be drawn more tightly and bear a greater burden in its use, and that these facts caused some of the strands of wire to break, and it alleges that the breaks or defects in the wire as set out by plaintiff were caused by such wrongful use and improper manner of adjustment.

The three instructions given by the court fairly submitted each of these issues, and the evidence authorized their submission.

But it is argued for appellant that the authority of its agents to make the warranty sued on must be pleaded and proven, and that neither was done. The plaintiffs' petition alleges that they bought the wire line from the defendant, and that at the time the defendant made the warranty heretofore referred to. This necessarily means that the plaintiffs in dealing with the corporate defendant dealt with their authorized agent, and the evidence shows that one of the men to whom appellees talked over the 'phone was the local manager of appellant's store at Winchester, and that the other was a salesman in that store. The very business of appellant was the selling of oil well supplies, and it maintained its place of business with its agents there for that purpose. It would seem to require no argument to establish that the manager of a business of a corporation has authority to bind it in the sale of goods ordinarily handled in the course of the business. The sale was made by this agent, the goods were shipped by the agent, and he appears to have been in charge of the business. The situation is wholly different from that of a traveling salesman with limited authority who goes over the country representing his employer. It was within the scope of the manager's apparent authority to make such a warranty. White Plains Coal Co. v. Teague, 163 Ky. 110; Miller Supply Co. v. Limestone Mining Co., 159 Ky. 696.

The contention that appellant was entitled to a judgment, notwithstanding the verdict, because the pleadings failed to allege a tender back of the wire line is untenable. Where there is a breach of warranty in the purchase of personal property, the warrantee has two remedies; he may keep the property and sue for damages, or he may tender back the property to the

seller and institute his action for a rescission of the contract.

In this case there was no necessity of a tender, it being only an action for damages. Barnard v. Napier, 167 Ky. 824; Glover Machine Co. v. Cooke-Jellico Coal Co., 173 Ky. 675; Becker Co. v. Baker, 146 Ky. 233.

There was evidence in this case which authorized a finding by the jury that the wire line was of no value whatever, and the court only authorized a recovery of the freight paid, the transportation expenses, and the cost of attaching the line to appellee's machinery in the event they should so find.

On the whole case we see no substantial error, and the judgment is therefore affirmed.