## Louisville Cement Company v. Clell Coleman & Sons.

(Decided December 2, 1927.)

### Appeal from Mercer Circuit Court.

1. Principal and Agent.—Whether representatives of two cement companies, each knowing of other's contract with same dealers, agreed that whichever company got certain contract would pay such dealers ten cents a barrel on all cement sold thereunder, if they would remain neutral, held for jury on conflicting evidence.

2.  Principal and Agent.—Where dealers declared on contract, established without dispute, obligating them not to assist either of two competing principals in getting certain contract, but to remain neutral, in action against successful principal for commission agreed on as consideration, but subsequently filed amended petition averring contract, performed by them, to assist defendant in selling cement, defendant was entitled to peremptory instruction.

3.  Principal and Agent.—Agency may be found from the evidence as a whole and the facts and circumstances, notwithstanding alleged principal's and agent's categorical answers to contrary.

4.  Principal and Agent.—To show existence and scope of agency, it is admissible to prove circumstances tending to show exercise of authority by agent and its recognition by principal, though not directly connected with issues tried.

5.  Principal and Agent.—In dealers' action for commission on sales under contract obtained by one of two competing companies, represented by plaintiffs, evidence that defendant's traveling salesman, who contracted for payment of commission in consideration of plaintiffs' remaining neutral, had made similar contracts with others, which were recognized and carried out by defendant, and letter from latter's assistant sales manager advising plaintiffs of defendant's inability to pay commission, held admissible to show extent of salesman's authority.

6.  Principal and Agent.—Whether cement company's traveling salesman had authority to make contract to pay dealers representing such company and a competing company a commission on sales, under contract procured by former company, in consideration of dealers' remaining neutral, held for jury.

7.  Contracts.—Contract by two companies, acquiescing in representation of both by same dealers in certain territory, to pay such dealers a commission for remaining neutral, and making no effort to procure contract sought by each company for either of them, held not immoral or against public policy.

8.  Principal and Agent.—Where two principals acquiesce in agent's representation of each and contract with agent as to same subject matter, each acquiescing in contract made with other, agent may represent both.

9.  Contracts.—Contract by two companies, acquiescing in representation of both by same dealers, to pay latter a commission for remaining neutral, and making no effort to procure certain business sought by each company for either of them, held not illegal as tending to stifle competition; its effect being only to remove dealers as factor in determining which company should get business.

10.  Customs and Usages.—In dealers' action against one of two companies represented by them for commission which defendant's traveling salesman agreed would be paid on sales if defendant obtained contract sought by each company in consideration of plaintiff's remaining neutral, evidence of custom between manufacturers and dealers for traveling salesmen to make such contracts, held admissible.

11.  Principal and Agent.—Presumption is that manufacturer vesting traveling salesman with authority to appoint dealers gave him authority to make such contracts with dealers as conform to usual custom in trade.

E. H. GAITHER and HUMPHREY, CRAWFORD & MIDDLETON for appellant.

C. E. RANKIN for appellees.

OPINION OF THE COURT BY JUDGE DIETZMAN—Reversing.

For a number of years prior to the summer of 1923 the appellees were engaged in the business of handling and selling building materials at Burgin, Ky.  During this time they handled the cement of several cement companies, among whom were the Universal Portland Cement Company, J. B. Speed & Co., and later the appellant, the Louisville Cement Company, which, as this record shows, in 1919 took over the business of selling the cement of J. B. Speed & Co.  The appellees were known as dealers, and had in the territory allotted them the exclusive representation for the companies they represented.  They represented the several companies they did at the same time and with the entire acquiescence of the companies concerned.  For a long time prior to 1923 there had been a good deal of talk about the erection of a hydroelectric dam in the Dix river near its junction with the Kentucky river.  This talk was finally realized in the Dix river dam.  In July, 1923, those who were promoting this dam were about ready to start the work of erecting the dam.  A man by the name of Jackson, who represented the appellant at Danville, Ky., called up the appellant in this month of July, 1923, and asked it for a price on cement delivered at Burgin.  Mr. Hill, the assistant sales manager of the appellant, in response to this request, sent Beard, a salesman of the appellant, to see Jackson.  Beard claims that he did not know why Jackson had sent the inquiry he did, and that he did not go to see Jackson on this inquiry before he had been to see the appellees.  But it is very strange that Beard, who knew so well that the appellees were the dealers for the appellant at Burgin, ever left his office at all in response to Jackson's inquiry, unless he then knew that Jackson wanted this cement for the Dix river dam, the probable location of which Beard did not then know, or unless he ascertained that fact from Jackson before he

went to see the appellees. At all events, Beard did, in July, 1923, visit the place of business of the appellees at Burgin. The appellees say that, when Beard got there, Mr. Calvin, representing the Universal Portland Cement Company, was present, and that Beard told them that he had been to see Jackson, who had informed him that the Dix river dam was going to be built in Jackson's territory. He was informed by the appellees that the dam was to be built where it later was, and that the dam would be in the appellees' territory, whereupon, as Beard admits, he went to the telephone, and called up Jackson, and informed him that the dam was in the appellees' territory.

The appellees, and in this they are supported by Calvin, testify that the matter of furnishing the cement to go into this dam was then brought up, and the upshot of the discussion was that both Calvin, representing the Universal Portland Cement Company, and Beard, representing the appellant, each knowing of the other's contract, agreed separately with the appellees that, if the latter would remain neutral in the matter, and not use their efforts to get the business for either company, but would let the two companies fight it out among themselves as to who should get the contract, the successful company to sell directly to the Dix river dam people, then whichever company got such contract would give the appellees ten cents a barrel on all cement so sold. Beard denies in toto this whole matter. Yet we have him admitting that he quoted appellees at this time cement for this dam at $2.73 a barrel, and later on the same day quoted the Dix river dam people the same cement at $2.83 a barrel. Plainly, whether or not such an agreement as the appellees here claim was made was a question for the jury. The appellant did sell the cement to the Dix river dam people. It seems, however, that Mr. Courtney, the sales manager of the appellant, who was in ignorance of what his assistant sales manager and salesman were doing, they being in the same ignorance of what he was doing, sold this cement to the Dix river dam people. When the appellees discovered that the appellant had sold this cement, they made inquiry for their commission. Whereupon Mr. Hill, the assistant sales manager, wrote them, among other things, as follows:

"In connection with the Dix river dam project, the competition was so keen for this job we had to make such a very close price in order to make the

sale that we were unable to include anything in our price for you. Another company made a price very much less than we expected we would have to make.''

Appellees then brought this suit to recover their commission, and in their petition they declared on the contract as we have set out above. In addition to the evidence we have above summarized, the appellees introduced a lot of testimony to show that on other occasions, with other people, and under circumstances similar to those here involved, although the contracts were not quite so large as this one, Beard had made contracts for the appellant like the one here sued on. They also introduced evidence to show that it was the universal custom in the cement trade for the cement manufacturer, where he sold directly to the contractor cement to be delivered in the territory of a dealer, to charge the contractor a differential of ten cents a barrel which was paid over by the manufacturer to the dealer, even though the dealer had nothing to do with the sale of the cement to the contractor; the manufacturer doing this in order to protect his dealer. The quantity of cement sold by the appellant for this Dix river dam project is not in dispute, so that the amount the appellees were entitled to recover, if anything, was agreed upon. Just before the submission of this case to the jury, the appellees filed an amended petition, in which they averred the contract sued on to be that they were to assist the appellant in making the sale of the cement in question, in return for which they were to be paid the ten cents per barrel as stated, and that they had assisted the appellant in making the sale. This amended petition was controverted of record. The case was then submitted to the jury, and it found a verdict in the stipulated amount for the appellees. The appellant appeals.

Appellant first insists that it was entitled to a peremptory instruction. Had the appellees stood pat on their original petition, appellant's contention would have been without merit, as we shall presently see. But, the appellees having filed the amended petition they did, the appellant is correct in its contention. The proof establishes without any dispute that the appellees were not to assist either company in getting the contract, but, on the contrary, were to do nothing and remain neutral in this matter, and that this they had done. The proof utterly

failed to establish the cause of action set up in the amended petition.

However, as the appellees may again amend when this case returns to the lower court and rely on the contract they proved, it becomes necessary to discuss the other points urged by the appellant. It urges that, even had the cause of action been rested on the original contract alleged, it was yet entitled to a peremptory instruction, because the contract was made by Beard, who was only a traveling salesman, and as such had no authority to make this kind of a contract. The case of Standard Sanitary Mfg. Co. v. Stump, 212 Ky. 253, 278 S. W. 583, is relied upon. That case correctly lays down the rule applicable to the authority of traveling salesmen. But, to show that Beard here had a greater and wider authority than that of the ordinary traveling salesman, the appellees introduced, as stated, proof to show that he had on a number of other occasions, and with other people, made contracts exactly like or similar to the one here in dispute, which contracts had been recognized and carried out by the appellant, and further introduced the letter of Mr. Hill to show the appellant knew that Beard had made this contract, but that it had been unable to carry it out. Appellant insists that this evidence concerning what Beard had done with other people on other occasions was not admissible. It is settled that agency may be found from the evidence as a whole and from the facts and circumstances, notwithstanding the categorical answers to the contrary of the alleged principal and agent. Rosenburg v. Dahl, 162 Ky. 92, 172 S. W. 113, Ann. Cas. 1916E, 1110. Among the several ways of showing the existence and scope of an agency, it is admissible to prove circumstances tending to show the exercise of authority on the part of the agent and its recognition by the principal, although they may have no direct connection with the issues tried. In Vogue Silk Co. v. A. Brawner Silk Co., 95 N. J. Law, 72, 111 A. 656, a question of evidence like the one now under discussion was presented for decision. The court said:

"Where other contracts are of a similar nature and made under substantially similar conditions and circumstances, at about the same time as the one in dispute, they are admissible as evidence of an alleged agent's authority to bind his principal."

To the same effect is McCormick Harvesting Machine Co. v. Lambert, 120 Iowa, 181, 94 N. W. 497; Smith v. McDole (Mo. App.) 269 S. W. 629; and Welch v. Clifton Mfg. Co., 55 S. C. 568, 33 S. E. 739. In Mechem on Agency (2d. Ed.) sec. 263, the author states the rule thus:

"So evidence of agency is also often found in the fact that the alleged principal has acquiesced in, recognized or adopted similar acts done on other occasions by the assumed agent."

See, also, Wigmore on Evidence, sec. 377.

We are therefore of the opinion that the evidence complained of was admissible as tending to show the extent of Beard's authority. Although the appellant categorically denied that Beard had the authority to make this contract, yet the evidence introduced by appellees concerning similar contracts made by Beard with others, which contracts had been carried out by appellant coupled with Hill's letter, made this a question for the jury, and the court correctly so submitted this issue of Beard's authority to that body. There was nothing immoral or against public policy in this contract. Both the Universal Portland Cement Company and the appellant knew that the appellees were representing them both. Both companies acquiesced in this character of representation, and, if appellees' proof is to be believed, as it was by the jury, the contract here claimed by the appellees was made with both companies; each company acquiescing in the contract made with the other. Under such circumstances the agent may represent more than one principal. 2 C. J. 713. The contract did not tend to stifle any competition, but only removed the appellees as a factor in determining which one of the two competing companies might get the business. But it is further insisted that the evidence of what the custom was in the trade concerning contracts like the one here in dispute was inadmissible. In Mechem on Agency (2d Ed.) sec. 716, the author says:

"A particular usage or custom also may operate to affect the range of an agent's powers. Where the principal confers upon his agent an authority of a kind, or empowers him to transact business of a nature, in reference to which there is a well-defined and publicly known usage, it is the presumption of the law, in the absence of anything to indicate a con-

trary intent, that the authority was conferred in contemplation of the usage.''

Here there was evidence tending to show that Beard had authority to appoint dealers. The custom established by the appellee's proof, and admitted to some extent by the appellant, tended to establish that Beard, in appointing dealers, had authority to make a contract like the one here in dispute, for such was the usual contract, if the jury believed appellees' proof as to the custom, between cement manufacturers and dealers. In vesting Beard with the authority to appoint dealers, if appellant did so, the presumption is that it gave him such authority to make such contracts with dealers as conformed to the usual custom in the trade. This evidence, then, complained of was admissible.

However, for the error pointed out, this case must be reversed, with instructions to grant the appellant a new trial in conformity with this opinion.