**R. H. KYLE FURNITURE COMPANY, Appellant,**

**v.**

**RUSSELL DRY GOODS COMPANY, Appellee.**

Court of Appeals of Kentucky.

Nov. 11, 1960.

L. C. Lawrence, Liberty, for appellant.

Leonard E. Wilson, Jamestown, Frank Goad, Scottsville, for appellee.

STANLEY, Commissioner.

This is an action by R. H. Kyle Furniture Company against the Russell Dry Goods Company to recover $1,767.15 for a bill of goods alleged to have been sold and delivered to the defendant on order of its duly authorized agent, Clyde Thomas. The defendant denied the purchase and delivery. The verdict was for the defendant. The plaintiff's motion for an appeal under KRS 21.080 is sustained.

The questions are whether Thomas bought the merchandise for himself and other persons or for the store, of which he was the manager, and whether the plaintiff could rely upon the apparent or ostensible authority of Thomas to buy the merchandise for the company.

The plaintiff is a wholesale dealer in furniture, located in Charleston, West Virginia. The defendant conducted a general dry goods store in Russell Springs, Kentucky. It was formerly a partnership in which Thomas was a partner with J. L. Turner and Cal Turner of Scottsville, Kentucky; but several years before this transaction the Russell Dry Goods Company became a corporation. Thomas continued in charge as general manager. J. L. Turner and Son is also a corporation. It operates a chain of forty stores in Kentucky and Tennessee, one of which was the Russell Dry Goods Company.

H. T. Burdette, one of plaintiff's traveling salesmen, testified that Thomas first purchased certain items of furniture on October 12, 1955. They were shipped to and

charged to the company. There were several other like transactions before February 29, 1956, when Thomas and he discussed the proposition of setting up a special furniture department on the second floor of the Russell building. He submitted a stock order amounting to $2,471.40, subject to being confirmed by Cal Turner. Turner declined to approve it, as "he was not ready to go in the furniture business." There were several isolated orders given by Thomas which were duly shipped and charged to the dry goods company before an order was given on April 28, 1956, for an assortment of rugs, carpeting, dishes, lawnmowers, electric fans and furniture. The order aggregated $1,767.15. It was sent in as having been sold to the dry goods company and its account was charged. When the truck arrived at Russell Springs with the shipment, the store was on fire or had already burned down. At Thomas' request, the goods were taken to his garage and unloaded there. This is the account sued on.

Plaintiff's official having charge of its accounts filed copies of the several invoices showing the goods were bought by the dry goods company, shipped to and charged to it, and the account had been duly credited with payments. The first information the plaintiff had of any limitation upon Thomas' authority was a letter from Cal Turner, president of J. L. Turner and Company, declining to pay the account sued on.

The plaintiff filed an authenticated copy of Thomas' schedule of creditors filed in his bankruptcy proceeding, which did not list the Kyle Furniture Company as one of his creditors.

Thomas testified that all of the purchases had been made for himself personally or clerks in the store or friends at wholesale prices. He admits having made a little profit on some of the shipments, but whether for himself or the store is not revealed. One clerk confirmed his purchase for her. Thomas insisted that Burdette knew these were personal transactions. He stated that he would personally pay Burdette for the shipments when he came around on his visits. But he produced no documentary evidence thereof. Burdette denied this and many other affirmative statements. Thomas did not remember anything at all about the particular shipment involved here being received. Other than the evidence of the truckman, the record is silent as to what became of the merchandise.

Cal Turner testified that Thomas and all other managers of his various subsidiary stores had been positively denied authority to make any purchases of stock.

The defendant undertook to show that furniture was not handled in the store. This apparently was to prove that the plaintiff should have known Thomas was not buying the merchandise as stock for the store. But a long-time clerk testified that it had carried in stock household articles, wallpaper, rugs, mattresses, bed springs and, at one time, window fans and some chairs made in a local factory. This tended to show that the defendant did not confine its operations strictly to "dry goods."

■ The court sustained an objection to an inquiry of the plaintiff's credit manager concerning the custom in the business world to rely upon the authority of the manager of a store to buy merchandise. The witness avowed that store managers normally have full authority to purchase merchandise, and this is generally relied upon. We think this evidence was competent. The evidence had a tendency to prove a presumption of agency. Crump v. Sabath, 261 Ky. 652, 88 S.W.2d 665. See Annotation, 55 A.L.R.2d 6, notes, p. 104 et seq. "Authority to contract on behalf of the principal may arise from a usage or custom of business." 2 Am.Jur., Agency, § 107. An objection was first sustained to a similar inquiry of Burdette, but the court reversed the ruling and on a final examination admitted his evidence that store managers generally have that authority.

On a thorough cross-examination of the plaintiff's credit manager as to procedure

usually taken to confirm a credit rating of a customer, he stated that it was usual to consult Dun & Bradstreet, the well-known reporting agency; but he could not recall that that was done when the first order. was received from the defendant company. By way of rebuttal, the credit manager for Turner and Son stated that Dun & Bradstreet reported the credit rating of that company but not of the Russell Dry Goods Company or any other subsidiary. Mr. Turner was permitted over objection to file a document which purported to be an "Analytical Report" of Dun & Bradstreet on the financial rating of J. L. Turner and Son. The report shows the Russell Dry Goods Company to be one of its subsidiaries. The paper contains a statement that individual managers of the subsidiaries are not authorized to make independent purchases.

This private document not only had the vice of being unauthenticated by anybody, but it was purely unverified hearsay. Helton v. Asher, 103 Ky. 730, 46 S.W. 22, 20 Ky.Law Rep. 935, 82 Am.St.Rep. 601. Moreover, as stated in 32 C.J.S. Evidence § 731, reports of a commercial agency are usually not admissible against third persons. Though introduced here to show notice of a limitation upon the authority of the manager of the defendant company, there is no evidence that the plaintiff ever saw the report. The admission of this document was error.

For the purpose of showing that Turner had recognized the authority of Thomas to make purchases for his store, the plaintiff introduced evidence that he had bought a lot of watches from a certain jewelry company. Turner had denied liability of the Russell Dry Goods Company for the account, and in a suit to collect it the company had filed an answer similar to that filed in this case. Thereafter, Turner directed that the account be paid. He explained that it was because it appeared the store got the use of the watches for promotional purposes. The court admonished the jury that the evidence was for the purpose of establishing agency, if it tended to do so. In two instances the court added some comment which, in substance, was that the court did not want the jury to get the wrong impression that Mr. Turner did not pay his debts and had to be sued to collect them. These were unfortunate comments and may have had some influence on the minds of the jury adverse to the plaintiff. It is not necessary to say whether we regard them as prejudicial since the judgment is being reversed on other grounds. City of Prestonsburg v. Mellon, 220 Ky. 808, 295 S.W. 1064; Levisa River R. Co. v. Phillips, 312 Ky. 367, 227 S.W.2d 922.

It is within well-settled law that the plaintiff, as principal, is bound by the notice or knowledge of its salesman, Burdette, although it was not actually communicated to his company. Shrader v. Porter, 210 Ky. 429, 276 S.W. 115; Martin v. Provident Life & Accident Ins. Co., 242 Ky. 667, 47 S.W.2d 524; Wilson Gas Utilities Corp. v. Baker, 276 Ky. 368, 124 S.W. 2d 489; American Nat. Red Cross v. Brandeis Machinery & Supply Co., 286 Ky. 665, 151 S.W.2d 445; 2 Am.Jur., Agency, § 371. And further, though it was competent for the principal to limit the authority of an agent, the restriction on the authority of Thomas to buy merchandise for the store is not binding on the plaintiff, for there was no evidence that it had notice or knowledge thereof; and the directive was ineffective to limit the agent's apparent authority in this transaction or relieve the company of an obligation to pay for the merchandise. May v. Ken-Rad Corp., 279 Ky. 601, 131 S.W.2d 490; American Nat. Red Cross v. Brandeis Machinery & Supply Co., 286 Ky. 665, 151 S.W.2d 445; 2 C.J.S. Agency §§ 96b, 114a(2) (b), pp. 1208, 1311; 2 Am. Jur., Agency, §§ 99–105. Therefore, the defendant is bound on this contract of purchase, if it was made by Thomas within the implied or ostensible scope of his authority as manager of the store, unless plaintiff's salesman knew or had reason to know that he was exceeding his authority in ordering the goods on the credit of the

company. This is so well recognized that citation of law is scarcely required. It is written in American Nat. Red Cross v. Brandeis Machinery & Supply Co., supra [286 Ky. 665, 151 S.W.2d 451]:

> "The public has the right to conclude that a corporation or an individual acting through another person has given him the power and authority which naturally and properly belong to the character in which the agent is held out, and may rely upon his having such authority as is suggested by the ordinary habits and experiences of mankind. Mechem, §§ 709, 710. If this were not the rule, commercial relations would be constantly disturbed and chaos result. The law of estoppel steps in to prevent the escape from liability, for by his action or conduct—affirmative or negative—he induced or permitted the third person to put his trust in the agent's representations. Kentucky-Pennsylvania Oil & Gas Corp. v. Clark, 247 Ky. 438, 57 S.W.2d 65; Mechem, Section 722, et seq; 2 C.J.S. Agency, § 29(b); 2 Am.Jur., Agency, Section 105."

There are many cases of foreign jurisdictions holding that a general manager of a store is presumed to have authority to buy merchandise. Annotation, "Implied or apparent authority of agent to purchase or order goods or merchandise." Annotation, 55 A.L.R.2d 6. In a prefatory note, p. 13, it is said:

> "A technical distinction exists between implied authority and apparent authority, implied authority being that which is an incident of the position occupied by the agent and which is more or less indispensable to the performance of the duties of the position, while apparent authority is that which the principal by a course of conduct has held the agent out as possessing, or which he through negligence has allowed the agent to assume, and which third persons dealing with the agent in good faith are justified in relying upon."

See also 2 C.J.S. Agency §§ 96, 99.

■ As stated in some of the cases summarized, it would be impossible for persons to deal safely with corporations if in each case they were required at their peril to determine the exact scope of the authority of such agents as managers and superintendents; hence, they are justified in relying upon the apparent or implied authority of such agents. We think that is sound law. The term "apparent or implied authority" would not likely apply to the purchase of goods wholly outside the character or line of merchandise carried, e. g., the manager of a men's clothing store buying a large quantity of drugs. In the instant case, the stock of the defendant's country store was not limited to "dry goods," which is generally defined as textile fabrics. In these days the name of a store is of little significance, e. g., a "Five and Ten Cent Store," and many department stores. It was undenied that the Russell store had previously stocked articles similar in character to those contained in this order. The purchase could well be regarded as having been made in the ordinary and usual course of the business, even though the purchases may have been specially made for individual customers.

■ Ordinarily, the burden of proof rests on a party asserting the relation and extent of agency. People's National Bank v. Citizens' Savings Bank, 239 Ky. 30, 38 S.W.2d 959. But in Buffalo Coal Creek Mining Co. v. Troendle, 99 S.W. 622, 623, 30 Ky.Law Rep. 740, one of the issues was whether the defendant's general manager had authority to buy certain articles of personal property on behalf of the company. We held that on that issue the burden of proof was upon the defendant, "for the general manager of a mining company had implied, if not the actual, authority to purchase articles of the kind named unless notice of a limitation upon his authority

was brought home to the seller. In the absence of notice to third persons dealing with him for his company, his actual authority was not limited to a lesser scope than his position and title reasonably and naturally implied." See, as recognizing that a general manager has the apparent or implied power to bind his principal in doing what is usual and customary in the business intrusted to him, Frick & Lindsey Co. v. Holbrook & Parks, 202 Ky. 416, 259 S.W. 1033; Louisville Cement Co. v. Clell Coleman & Sons, 222 Ky. 183, 300 S.W. 633, 636, quoting Mechem on Agency; Kentucky River Coal Corp. v. Williams, 226 Ky. 93, 10 S.W.2d 617; Kentucky-Pennsylvania Oil & Gas Corp. v. Clark, 247 Ky. 438, 57 S.W.2d 65. We are of opinion the court should hold as a matter of law that Thomas, as manager of the defendant's store, had ostensible authority to purchase the goods, subject, however, to the jury believing that Burdette, the plaintiff's agent, knew, or should have known by the exercise of ordinary and reasonable prudence, that he did not have such authority. 3 C.J.S. Agency § 330, pp. 330, 333 et seq.; Wedding v. Duncan, 310 Ky. 374, 220 S.W.2d 564.

The court instructed the jury that if they believed Clyde Thomas was the authorized agent of the defendant and that the defendant, through him "acting within the scope or apparent scope of his authority," purchased the merchandise and the plaintiff sold and delivered it, through Thomas acting in such capacity, to find for the plaintiff. Another instruction stated it to be the duty of the plaintiff to exercise the diligence of ordinarily prudent businessmen to determine whether Thomas had authority to purchase the goods and if he failed to do so, the verdict should be for the defendant.

The first instruction was patterned after that given in Monohan v. Grayson County Supply Co., 245 Ky. 781, 54 S.W. 2d 311, as published in § 631, Stanley's Instructions to Juries, with a note that the court had held the instruction to be correct

*as far as it went* and that the defendant could not complain that it was not more concrete or did not define the terms used because it had offered no instruction to that effect. The record in the Monohan case reveals that the objection was that the instruction did not give the jury any guide as to what was meant by the term "apparent or ostensible authority." In the present case the appellant objected to the instruction given but gave no specific ground, as required by CR 51. However, the appellant offered an instruction which, though faulty in form, is regarded as being tantamount to revealing the ground and sufficient to save its right to attack the given instruction. See Fields v. Rutledge, Ky., 284 S.W.2d 659, 58 A.L.R.2d 210.

Since there was no contradiction of the delivery of the merchandise to Thomas—his lapse of memory in respect thereto not constituting a denial—the only issues to be submitted to the jury were whether Thomas bought the bill of goods in his individual capacity and on his own responsibility or bought it for and in the name of the defendant company and with the knowledge of plaintiff's salesman. The plaintiff had the right to rely on the presumption that the purchase was for the company and within the manager's implied or ostensible authority to do so. But burden was upon the defendant to prove that it was not within that authority and its salesman, Burdette, knew it. There was evidence pro and con on these issues.

We believe if upon another trial the evidence shall be substantially the same, the instruction should in substance be in this form: The jury will return a verdict for the plaintiff, R. H. Kyle Furniture Company, for the sum of $1,767.15, unless they shall believe from the evidence that Clyde Thomas (a) ordered the merchandise on his individual account and Burdette accepted it as such; or (b) if he bought it for and in the name of the store, that the plaintiff's salesman, Burdette, knew, or ·in the exercise of reasonable diligence or pru-

dence should have known, that Thomas had no authority to buy the goods on the credit of the defendant, the Russell Dry Goods Company. In either of the latter events, you will find for the defendant.

The judgment is reversed.