**QUICK LOANS, INC., Appellant,**

v.

**ASHLAND FINANCE COMPANY NO. 2 OF LEXINGTON, Appellee.**

Court of Appeals of Kentucky.

Feb. 9, 1968.

Gess, Mattingly, Saunier & Atchison, Lexington, for appellant.

W. H. Dysard, Dysard, Dysard, Johnson & Welch, Ashland, Angus W. McDonald, McDonald, Alford & Roszell, Lexington, for appellee.

EDWARD P. HILL, Judge.

Appellant filed this suit to collect $125,953.07 from appellee for breach of a contract to "either purchase or to make reasonable, diligent and efficient efforts to effect the collection" of 301 small notes aggregating the above amount. The judgment appealed from dismissed the complaint

and amendments thereto with prejudice. This appeal followed.

The important provisions of the contract sued on are quoted herewith:

"WHEREAS, Quick is desirous of selling, transferring and assigning said notes, without recourse, to Ashland at the price and upon the terms, provisions and conditions hereinafter set forth and *Ashland is willing to purchase $30,000.00* face principal balance of said notes *as shall be selected by it* and further of acquiring the furniture, fixtures, office supplies and leasehold, if any, in the premises designated as 150 South Limestone Street, Lexington, Kentucky

"NOW, THEREFORE, for and in consideration of the sum of $40,000.00, of which $10,000.00 has this day been remitted by Ashland to Quick, the receipt of which is hereby acknowledged and $30,-000.00 to be paid by Ashland to Quick within sixty (60) days immediately following the date hereof, Quick does hereby agree to sell, transfer, assign and endorse, without recourse, to Ashland, it successors and assigns $30,000.00 of face principal balance of its notes receivable *as shall be selected by Ashland* within sixty (60) days from the date hereof.

\*     \*     \*     \*     \*     \*

"Quick shall and it does hereby deliver to Ashland all of its notes receivable, as listed in the attachment hereto for the *purpose of purchase or collections* thereof at the *option of Ashland, except* at the option of Ashland, except only with respect to $30,000.00 thereof which *Ashland is unconditionally obligated to purchase* as aforesaid. The price payable for all such notes (exclusive of the initial $30,000.00 face principal value thereof) shall be the face principal balance thereof plus an amount equal to twenty-five per cent (25%) of the accrued and collected interest thereon.

"All accrued and uncollected interest upon the selected notes of the aggregate principal balance of $30,000.00 shall vest in Ashland as of the date of the transfer of said notes.

\*     \*     \*     \*     \*     \*

"Simultaneously, with the purchase by Ashland of the total of $30,000.00 of face principal balances of notes payable to Quick, as aforesaid, Quick shall designate Ashland as its agent to collect for its account all of the *remaining notes* listed in the attachment hereto, and in consideration of reasonable, diligent and efficient efforts on the part of Ashland to collect said notes, Ashland shall receive as its sole compensation \* \* \*.

"Quick may withdraw from the agency at any time subsequent to sixty (60) days from the date hereof, the whole or any amount of the aforementioned promissory negotiable notes for the purpose of undertaking the collection thereof through its own employees or otherwise \* \* \*.

"Quick shall have the right and privilege of designating a representative or representatives to work with Ashland in connection with the collection of the aforementioned notes and in the event that Quick, its representative or representatives request Ashland to re-write any such note or notes Ashland will forthwith do so, making the same payable to its order and the endorsing such note or notes to Quick, without recourse." (Emphasis added.)

Appellee purchased and paid for the notes it selected, aggregating $30,000, and paid the $10,000 ostensibly for the furniture, leasehold estate, and its franchise; there is no question as to these items. Ashland did not exercise its option to purchase the balance of the notes.

The contract was dated July 21, 1964. The notes then remaining in the hands of Ashland were delivered on October 6, 1964, to Richard D. Moloney, treasurer of Quick.

The following receipt was taken by Ashland from Moloney:

"This is to certify that I, Richard D. Moloney, this date 10–6–64, received from Ashland Finance Company, 150 South Limestone, Lexington, Kentucky, 301 accounts totaling $125,915.87.

"I also certify that this relieves Ashland Finance Company of all obligations pertaining to all Quick Loan accounts. "This date, I have received all notes and ledger cards.

"Quick Loan Company,
by Richard D. Moloney,
Treasurer."

It is the position of appellant that upon Ashland's failure to exercise its option to purchase the remaining notes, it was obligated to "make reasonable, diligent and efficient efforts to effect the collection" of them; that it failed to do so, which failure amounted to a breach of Ashland's obligation under the contract. Appellant also argues that Quick, being a corporation, could speak only through the action of its board of directors, and that the action of Moloney was unauthorized by the corporation and was ultra vires and not binding upon the corporation. It would have Ashland take the notes back and pay the full amount of them. Needless to say, appellee took the opposite view.

In his first opinion, the chancellor concluded that there was a valid "rescission" of the contract as to the notes or accounts in question; therefore, it was not necessary for him to determine from the evidence whether Ashland did in fact exercise "reasonable, diligent and efficient efforts" for collection of the notes.

The chancellor also found as a matter of fact and stated in his opinion that: "[T]he evidence makes it abundantly clear that though Quick was in form a corporation, nevertheless from its inception it was operated as though it was a partnership or a joint venture."

In a supplemental opinion made in connection with his ruling on appellant's motion and grounds for a new trial, the chancellor concluded the contract was also unilateral.

We copy herewith appellant's "Statement of Questions Presented":

"1. Were the findings of fact and conclusions of law stated in the first opinion of the Court below and the decision and judgment resulting therefrom correct?

"2. Was the decision of the trial Court to believe appellee's witnesses and discredit the testimony of appellant's witnesses reasonable or arbitrary?

"3. Were the findings of fact and conclusions of law stated in the second opinion of the Court below and the decision and order resulting therefrom correct?"

We shall treat the first question presented as an argument that the judgment is unsupported by competent evidence and clearly erroneous. In regard to this question, it should be noted the contract made no provision for a remedy to Quick in the event Ashland did not exercise "reasonable, diligent and efficient efforts." On the contrary, the contract authorized Quick to "withdraw from the agency at any time subsequent to sixty (60) days from the date hereof, the whole or any amount of the aforementioned promissory negotiable notes for the purpose of undertaking the collection thereof through its own employees or otherwise."

There was abundant evidence that Ashland was diligent in its efforts to collect. Here we quote from the testimony of Moloney, appellant's treasurer:

"Q. 16 Thank you. Now, with respect to the activities of you and Mr. Frankey subsequent to July 21, I will ask you to say if it isn't a fact that almost every day for the first six weeks after that date of July 21, if you and he did not jointly call on the people who owned Quick Loans for the purpose either of

purchasing their notes by Ashland or of making collections on them?

"A. Yes, sir.

"Q. 17 And Mr. Frankey went with you on a substantial number of these occasions?

"A. Yes, sir.

"Q. 18 And even after the $30,000.00 had been collected, was that still true?

"A. In a number of cases, yes sir.

\*    \*    \*    \*    \*    \*

"Q. 25 In addition to purchasing those additional notes over and above the $30,-000.00, did the Ashland Finance people further assist you in making collections on those which they didn't buy?

"A. Yes, sir."

There was other evidence of like import that indicated Ashland was diligent which we shall not quote in the interest of brevity. Although the chancellor did not find it necessary to determine the question of "diligence" on the part of Ashland there was abundant evidence to justify a finding that Ashland was "diligent."

Appellant says the notes became worthless during the seventy-seven days they were in the possession of Ashland. There is no proof to this effect, and we are not persuaded that so many individual notes could become "worthless" in such a brief time.

◼ We direct our attention to the question of the authority of Moloney to accept return of the notes and execute the release. Quick Loans was a corporation with four stockholders who constituted the board of directors. Moloney was duly selected secretary-treasurer, with authority under the by-laws to have custody of its notes. He was the same person who turned the notes over to Ashland in the beginning. He worked with Ashland in efforts to collect the notes. We think Moloney had both actual and ostensible authority to accept the return of the notes and execute the release. 19 Am. Jur.2d Corporations, § 1164; Kyle Furniture Co. v. Russell Dry Goods Co., Ky., 340 S.W.2d 220, 85 A.L.R.2d 428.

◼ The second question presented is whether the decision of the chancellor in believing appellee's witnesses and discrediting the testimony of appellant's witnesses was "reasonable or arbitrary." Where there is conflict in the evidence, the chancellor must by necessity believe one theory to the disbelief of the other; otherwise, he would never arrive at a judgment. In so doing, he does not act unreasonably or arbitrarily; he only performs his duty.

◼ The third and final question presented urges that the second findings of fact and conclusions of law were incorrect. This conclusion, as noted above, merely added that the contract was unilateral. We need not determine whether this was or was not correct. The chancellor's first opinion, findings of fact and conclusions of law were correct and fully justified by the evidence. We also think the chancellor would have been fully justified in finding that Ashland was "diligent."

◼ Sandwiched in appellant's brief is the further argument that appellant was entitled to a new trial for newly discovered evidence. The chancellor overruled the motion for a new trial. The newly discovered evidence was that of a secretary to one of the officers of Quick Loans, who worked in the office of appellant during the time involved. We cannot say the chancellor abused a sound discretion in holding that appellant "could have, by the exercise of reasonable diligence produced Mrs. Rappert" as a rebuttal witness at the trial.

The judgment is not found to be clearly or at all erroneous. CR 52.01.

The judgment is affirmed.

All concur.