**L. Michael CURRY, Appellant,**

v.

**Edward R. BENNETT, Appellee.**

**No. 2007–CA–002315–MR.**

Court of Appeals of Kentucky.

April 24, 2009.

As Modified May 1, 2009.

Discretionary Review Denied by Supreme Court Dec. 10, 2009.

Bernard Pafunda, Lexington, KY, for appellant.

Samuel D. Hinkle, IV, Stephen A. Houston, Louisville, KY, for appellee.

Before DIXON, KELLER, and WINE, Judges.

## OPINION

WINE, Judge.

L. Michael Curry ("Curry") appeals from a judgment of the Shelby Circuit Court ordering him to specifically perform on a horse-breeding contract he had entered with Edward R. Bennett ("Bennett") and awarding damages for breach of that contract. Curry argues that the trial court erred by allowing evidence of customary practices in the industry, in its jury instructions on the issue of agency, and by admitting speculative testimony concerning damages. Finding no error on any of these issues, we affirm.

In 2005, Curry owned two American Saddlebred mares, Heavenly Watch and Callaway's Spirited Gal. Bennett owned an American Saddlebred stallion, Undulata's Nutcracker. In the spring of 2005, Todd Graham ("Graham"), Curry's trainer, contacted Bennett to discuss a breeding contract. According to Bennett, Curry wanted to breed both mares to Undulata's Nutcracker.

Bennett states that he agreed to this offer. Under the terms of the agreement, Bennett agreed to waive the stud fee in exchange for the first embryo out of each mare. Curry would receive the second embryo out of each mare. The parties would continue breeding the horses until Bennett and Curry each received a live foal out of each mare.

Following these discussions, Graham contacted Joan Lurie ("Lurie"), the stallion manager responsible for Undulata's Nutcracker, and informed her of the agreement. After confirming the agreement with Bennett, Lurie and Graham arranged to ship Undulata's Nutcracker's semen to Curry's West Virginia farm where Heavenly Watch and Callaway's Spirited Gal were stabled. The two mares were impregnated with the semen, and subsequently, the embryos were transferred to two recipient mares, Lady and Claire. The Heavenly Watch embryo was successfully transferred to Claire. However, the Callaway's Spirited Gal embryo was not successfully transferred to Lady. Subsequently, Graham ordered additional semen from Undulata's Nutcracker. Several later efforts to impregnate Heavenly Watch were unsuccessful. However, Graham was eventually able to twice impregnate Callaway's Spirited Gal with Undulata's Nutcracker's semen. The first embryo was transplanted to Lady, which aborted the foal. Callaway's Spirited Gal was impregnated a second time and later gave birth to a foal. Because this was a second foal, it belonged to Curry.

In September 2005, Bennett arranged to transport Claire from Curry's farm to Bennett's farm. Initially, Curry opposed the pick-up of Claire. However, Graham later allowed the mare to be transported to Bennett's farm. Claire delivered the Heavenly Watch foal, a colt, on May 6, 2006. But later that year, when Bennett attempted to register the colt with the American Saddlebred Horse Association ("ASHA"), Curry refused to provide the proper paperwork. Consequently, the colt was not eligible to show in ASHA competitions, and is essentially worthless as a show horse.

Bennett filed this action against Curry on August 24, 2006, seeking specific performance of the oral contract and for damages arising from the breach of that contract. Curry filed a counterclaim, alleging conversion of the Heavenly Watch colt. The matter proceeded to a jury trial on July 31 through August 3, 2007. At the conclusion of the trial, the jury returned a verdict for Bennett on his claims and against Curry on his counterclaim. Pursuant to the jury's verdict, the trial court entered an order directing Curry to provide the necessary paperwork to register the Heavenly Watch colt, and to complete the breeding arrangement provided in the oral contract. The trial court also awarded Bennett damages of $285,000.00, representing $260,000.00 for damages relating to the Heavenly Watch breeding contract, plus $25,000.00 for damages relating to the Callaway's Spirited Gal breeding.[1] Thereafter, Bennett withdrew his request for specific performance of the breeding contract related to Callaway's Spirited Gal. Curry filed motions for relief from the judgment and for a new trial. The trial court denied the motions on October 17, 2007, and this appeal followed.

■ Curry first argues that the trial court erred by allowing Lurie to testify that it is the custom in the American Saddlebred horse industry that the trainer acts as the agent for the horse owner. We

---

1. This claim arose from Curry's failure to provide to Bennett a live foal from Callaway's Spirited Gal pursuant to the breeding agreement.

disagree. As of July 1, 2006, evidence of habit or routine practice of an organization is admissible to prove that the conduct of a person on a particular occasion was in conformity with his or her stated habit or routine practice. Kentucky Rules of Evidence ("KRE") 406. Even under the prior law, such evidence was admissible for other purposes, such as to show reasonable reliance on the apparent authority of an agent. *R.H. Kyle Furniture Co. v. Russell Dry Goods Co.,* 340 S.W.2d 220 (Ky. 1960).

Lurie's testimony was relevant and admissible to show that Bennett reasonably relied on Graham's apparent authority to negotiate the agreement. Several other witnesses also testified that trainers often act as agents for owners. Furthermore, Curry admitted that he knew Graham was negotiating with Bennett. However, he stated that he had limited Graham's authority to enter an embryo swap for Heavenly Watch. Thus, the trial court did not abuse its discretion by allowing the testimony.

Curry next argues that the trial court improperly instructed the jury on the issue of agency. The trial court instructed the jury on this issue as follows:

### INSTRUCTION NO. 2

In considering the following Instruction consider the following:

1) The terms of a contract may be either express or implied.

2) There is no requirement for a contract to be in writing.

You the jury will find for the Plaintiff, Edward R. Bennett that Todd Graham was an agent for the Defendant, Michael Curry, unless you believe from the evidence that Plaintiff Bennett knew, or should have known, or in the exercise of reasonable diligence or prudence should

have known, that Todd Graham did not have authority to enter into a contract on behalf of Defendant, Michael Curry, to breed Curry's two mares, Heavenly Watch and Callaway's Spirited Gal, to Plaintiff's stallion, Undulata's Nutcracker? [sic]

Are you satisfied from the evidence that Todd Graham was an agent of the Defendant, Michael Curry?

■ Curry argues that this instruction improperly shifted the burden to him to prove that Graham was not acting as his agent. We find no error. In *R.H. Kyle Furniture Co. v. Russell Dry Goods Co., supra,* the former Court of Appeals noted that, ordinarily, the burden of proof rests on a party asserting the relation and extent of agency. But the Court went on to hold that if the principal asserts that he has limited the authority of his agent to act, then the principal has the burden of proving that the third party had notice of the limitation on the agent's authority. *Id.* at 225–26. The trial court substantially adopted the recommended instruction set out in *R.H. Kyle Furniture.*

Curry cites to Palmore's *Kentucky Instructions to Juries,* Fifth Ed., Vol. 2, § 33.03, as criticizing this instruction. Palmore's form instruction follows the instruction recommended in *R.H. Kyle Furniture.* However, the commentary to this section suggests that the result in *R.H. Kyle Furniture* is "anomalous" because apparent agency is generally an issue of fact, rather than a matter of law. Instead, Palmore suggests a different instruction which would clearly place the burden on the third party to show that he reasonably relied upon the authority of the apparent agent to act for his principal. § 33.04.

While Palmore's *Instructions* has significant persuasive authority, it must nevertheless yield to the holdings in published case law. Moreover, since Curry admitted

that he knew Graham was negotiating with Bennett, there is no question that Graham was acting as his agent. The only issue is whether Bennett knew that Graham lacked the authority to negotiate an embryo swap. As noted in *R.H. Kyle Furniture*, "[i]n the absence of notice to third persons dealing with him for his company, [the agent's] actual authority was not limited to a lesser scope than his position and title reasonably and naturally implied." *Id.* at 226. Therefore, the trial court properly instructed the jury on this issue.

■ Finally, Curry argues that the trial court improperly allowed proof of speculative damages. At trial, Bennett and Lurie both testified that the Heavenly Watch colt would likely have won the 2006 Futurity weanling competition if the colt had been properly registered. Among other things, this evidence served as a basis for Bennett's claim that the value of the colt was diminished due to Curry's failure to provide the necessary paperwork. Curry maintains that such evidence of damages is too speculative to form a basis for recovery.

■ We agree with Curry that damages must always be proven with reasonable certainty. *Pauline's Chicken Villa, Inc. v. KFC Corp.*, 701 S.W.2d 399, 401–02 (Ky.1985). Furthermore, contingent, uncertain and speculative damages generally may not be recovered. *Spencer v. Woods*, 282 S.W.2d 851, 852 (Ky.1955). But where it is reasonably certain that damage has resulted, mere uncertainty as to the amount does not preclude one's right of recovery or prevent a jury decision awarding damages. *Roadway Exp., Inc. v. Don Stohlman & Associates, Inc.*, 436 S.W.2d 63, 65 (Ky.1968).

Unlike in *Funny Cide Ventures, LLC v. Miami Herald Pub. Co.*, 955 So.2d 1241 (Fla.App.2007) (on which Curry relies heavily), the fact of damage was proven with reasonable certainty. The jury found that Curry had breached the contract by failing to provide the registration paperwork for the Heavenly Watch colt. As a result of that breach, Bennett was deprived of the opportunity to show the colt in ASHA competitions.

It is well-established that damages for breach of a contract are normally that sum which would put an injured party into the same position it would have been in had the contract been performed. *Hogan v. Long*, 922 S.W.2d 368, 371 (Ky.1995). Furthermore, Bennett is entitled to recover such damages for breach of the breeding contract "as may fairly and reasonably be considered as arising naturally-that is according to the usual course of things-from the breach of the contract itself or such as may reasonably be supposed to have been in the contemplation of the parties at the time they made the contract as the probable result of the breach...." *University of Louisville v. RAM Engineering & Const., Inc.*, 199 S.W.3d 746, 748 (Ky.App.2005). And in this case, the parties agree that the proper measure of damages is the diminution in the fair market value of the colt due to Curry's failure to properly provide the registration paperwork.

While it may have been speculative to say that the colt would have won the 2006 Futurity competition, this was not the only evidence which Bennett offered. Bennett also claims that the colt's fair market value has been significantly diminished because he was unable to enter the colt in that and other ASHA competitions. Due to this delay, he asserts that the lost value of the colt cannot be fully recovered even if the colt were now registered. In support of these claims, Bennett presented evidence that other foals by Undulata's Nutcracker had regularly won the Futurity competition. He also presented evidence showing

the value of horses with comparable lineages. Curry had the opportunity to cross-examine all of this evidence. When viewed in this context and in light of all of the evidence, we cannot say that the testimony from Lurie and Bennett about the colt's prospects was unduly speculative. Therefore, the trial court did not abuse its discretion by admitting this testimony.

Accordingly, the judgment of the Shelby Circuit Court is affirmed.

ALL CONCUR.