RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 19a0201p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

RONALD OSBORNE,

 *Plaintiff-Appellant*,

 *v.*

 No. 18-6062

METROPOLITAN GOVERNMENT OF NASHVILLE AND
DAVIDSON COUNTY,

 *Defendant-Appellee*.

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 3:18-cv-00390—Aleta Arthur Trauger, District Judge.

Decided and Filed:  August 20, 2019

Before:  SILER and DONALD, Circuit Judges.[*]

_____

### COUNSEL

**ON BRIEF:**  James Bryan Moseley, MOSELEY & MOSELEY, Murfreesboro, Tennessee, for Appellant.   J. Brooks Fox, METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY, Nashville, Tennessee, for Appellee.

_____

### OPINION

_____

     SILER, Circuit Judge.   Plaintiff Ronald Osborne appeals the district court's decision dismissing his claim under the Medicare Secondary Payer Act ("MSPA"), 42 U.S.C. § 1395y(b),

_____

[*]Judge Julia Smith Gibbons, a member of the original panel, was unavailable to participate in the panel's decision.  Judge Siler and Judge Donald act as a quorum pursuant to 28 U.S.C. § 46(d).

against the Metropolitan Government of Nashville and Davidson County ("Metro Nashville"). Because the MSPA does not provide Osborne a cause of action, the district court's decision is **AFFIRMED**.

I.

Due to an unsafe condition on the premises, Osborne suffered a broken arm while throwing away trash at the East Nashville Convenience Center in 2014. The center is owned and operated by Metro Nashville.

Osborne obtained a judgment against Metro Nashville in state court under the Tennessee Governmental Tort Liability Act; the damages included specific medical expenses related to the incident and found Osborne's comparative fault to be twenty percent.[1] The award was upheld on appeal in 2018.

This lawsuit arises because, prior to the state court suit, Osborne incurred medical expenses for which Metro Nashville did not pay at the time. Instead, and since Osborne is a Medicare recipient, Medicare made conditional payments to Osborne totaling at least $9,453.09. Because Metro Nashville failed to pay, Osborne claims he himself incurred—in addition to the costs of his state court litigation—the "cost of paying his co-pays, deductibles, and co-insurance for the treatment from his medical providers which was not covered through Medicare." According to the amended complaint, Metro Nashville still has not paid the state court judgment or reimbursed Medicare for its conditional payments.[2]

Osborne brought this suit in the Middle District of Tennessee alleging Metro Nashville is a primary payer who failed to pay under the MSPA, and is therefore liable for reimbursement of Medicare's conditional payments and a double damages penalty pursuant to 42 U.S.C.

---

[1]Osborne's amended complaint incorporated by reference the final judgment of the Davidson County Circuit Court. We may consider it in reviewing the grant of a motion to dismiss. *Wyser-Pratte Mgmt. Co. v. Telxon Corp.*, 413 F.3d 553, 560 (6th Cir. 2005) ("In addition to the allegations in the complaint, the court may also consider other materials that are integral to the complaint, are public records, or are otherwise appropriate for the taking of judicial notice.").

[2]Metro Nashville claims it paid the judgment in full, including discretionary costs, on May 22, 2018—the same month the Tennessee Court of Appeals filed its mandate. At this stage, we accept the factual allegations of the complaint as true. *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).

§ 1395y(b)(3)(A). The district court held that Osborne lacked statutory standing to sue for his individual losses and the conditional payments made by Medicare because the MSPA does not permit a private cause of action against tortfeasors. Because the MSPA is not a qui tam statute and financial injury suffered by Medicare is not attributed to Osborne, the district court found that he also lacked Article III standing to sue for Medicare's conditional payments. Finally, it noted that the individual harms claimed by Osborne in his complaint were conclusory and insufficient to survive a motion to dismiss.

## II.

This court reviews a district court's grant of a motion to dismiss de novo. *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). The complaint is construed in a light most favorable to the plaintiff, and the court accepts all well-pleaded factual allegations as true. *Crugher v. Prelesnik*, 761 F.3d 610, 614 (6th Cir. 2014). Those factual allegations must be enough "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## III.

Congress enacted the MSPA in 1980 to help curb the rising costs of Medicare. Prior to the MSPA, Medicare covered all medical treatment within its scope, and if a person also had a private insurer, that insurer would pay the remainder of covered services. *Bio-Medical Applications of Tenn., Inc. v. Cent. States Se. & Sw. Areas Health & Welfare Fund*, 656 F.3d 277, 278 (6th Cir. 2011). The MSPA reversed this pecking order. Private insurers who cover the same treatments as Medicare now foot the bill first as "primary payers," and Medicare pays the remainder of covered services as the "secondary payer." *Id.* When a primary plan "has not made or cannot reasonably be expected to make payment with respect to [an] item or service promptly[,]" Medicare may make conditional payments to ensure treatment. 42 U.S.C. § 1395y(b)(2)(B)(i). The MSPA provides for Medicare's reimbursement of conditional payments by a primary plan, or an entity that receives payment from a primary plan, if it is demonstrated that the primary plan "has or had a responsibility to make payment with respect to

such item or service." *Id.* § 1395y(b)(2)(B)(ii).     The United States may sue for the reimbursement. *Id.* § 1395y(b)(2)(B)(iii).

The MSPA also includes a private right of action for double damages against a primary plan. In full, it provides:

> There is established a private cause of action for damages (which shall be in an amount double the amount otherwise provided) in the case of a primary plan which fails to provide for primary payment (or appropriate reimbursement) in accordance with paragraphs (1) and (2)(A).

42 U.S.C. § 1395y(b)(3)(A).[3]  Through this provision, Osborne seeks double damages against Metro Nashville, a tortfeasor he alleges is a primary payer who has failed to pay or reimburse Medicare's conditional payments.

In 2003, Congress amended the MSPA to apply to tortfeasors. First, it expanded the definition of "primary plan" to include "self-insured plan[s]" and then deemed an entity "that engages in a business, trade, or profession" to have a self-insured plan "if it carries its own risk (whether by a failure to obtain insurance, or otherwise) in whole or in part." *Glover v. Liggett Grp., Inc.*, 459 F.3d 1304, 1306-07 (11th Cir. 2006) (quoting § 1395y(b)(2)(A)); *see Bio-Medical*, 656 F.3d at 289-90. Second, Congress added an amendment requiring primary plans to "reimburse Medicare only if its responsibility to pay has been demonstrated, which can occur through a judgment, settlement, or 'other means.'" *Bio-Medical*, 656 F.3d at 290 (quoting 42 U.S.C. § 1395y(b)(2)(B)(ii) (demonstrated responsibility provision)). To understand whether these amendments affected the private cause of action—indeed, whether Osborne may use the MSPA to sue a tortfeasor—a look at Sixth Circuit precedent is in order.

---

[3]This court has previously explained the private cause of action in straightforward terms: "a primary plan is liable under the private cause of action when it discriminates against planholders on the basis of their Medicare eligibility and therefore causes Medicare to step in and (temporarily) foot the bill." *Bio-Medical*, 656 F.3d at 286 (explaining how primary plans fail to pay in accordance with "paragraphs (1) and (2)(A)").

However, a later Sixth Circuit opinion distinguished *Bio-Medical*, holding the Medicare eligibility requirement in paragraph (1) applies only to group health plans, rather than all primary plans. *Mich. Spine and Brain Surgeons, PLLC v. State Farm Mut. Auto. Ins. Co.*, 758 F.3d 787 (6th Cir. 2014). Here, neither party has submitted argument concerning paragraph (1) as referenced in the private cause of action and the distinction does not affect the outcome of this case.

### A. *MSPA Private Cause of Action Against Tortfeasors After* Bio-Medical

In dicta, this court has previously said Osborne may not sue. In *Bio-Medical*, the court undertook an exhaustive analysis of the MSPA and spoke to the claim Osborne now brings:

> We believe that when Congress amended the Act in 2003 to permit lawsuits against tortfeasors and to add the "demonstrated responsibility" provision, Congress intended to permit lawsuits against tortfeasors only by *Medicare*, and not lawsuits against tortfeasors by *private parties*. Thus . . . the Act does not permit a private cause of action (as opposed to one brought by Medicare) in tort.

*Id.* at 292-93.

*Bio-Medical* leaned heavily on the context in which the amendments were passed. It explained that, prior to the 2003 amendments, federal courts did not consider tortfeasors to be "self-insured plans" under the MSPA. *Id.* at 289. This meant that when Medicare attempted to sue tobacco companies, drug manufacturers, and breast-implant manufacturers in the early 2000's—an effort to recover reimbursement for medical expenses it had paid to plaintiffs prior to the settlements that were then being paid out—it lost because tortfeasors were not covered by the Act. *Id.* In response, Congress amended the definition of "self-insured plans" to include tortfeasors, and added the demonstrated responsibility provision. *Id.* at 290 (citing 42 U.S.C. § 1395y(b)(2)(B)(ii)).

The amendments did not fit neatly into the MSPA, and the *Bio-Medical* court undertook the task of explaining their reach. First, it determined that the demonstrated responsibility provision must have been meant as a limit on tortfeasor liability. *Id.* at 290-91. It noted that, practically: "the concept of demonstrated responsibility makes sense only in the context of tort (where no evidence of responsibility exists until it is adjudicated ex post), rather than in the context of an insurance contract (where insurers assume the responsibility of paying for enumerated contingencies ex ante)." *Id.* at 291.

The court also determined that the provision applies only to lawsuits brought by Medicare for reimbursements, and not lawsuits brought by private parties. *Id.* at 292-93. Since the provision applies to suits against tortfeasors, and the provision also applies only to Medicare, it follows that Medicare alone may bring actions against tortfeasors under the MSPA. *Id.* at 293.

The court found that "no fewer than five reasons militate in favor of this conclusion." *Id.* at 292. Most importantly, the demonstrated responsibility provision's text limits only when primary plans must reimburse Medicare, and fails to mention when plans must pay private parties.**[4]** *Id.* The provision itself was inserted in a portion of the MSPA governing the relationship between Medicare and primary payers, again suggesting the provision is limited to the reimbursement of Medicare. *Id.* The legislative history, and particularly the legislative backdrop of Medicare's failed litigation position, further evidenced that it was Medicare, and not private parties, that Congress meant to be reimbursed by tortfeasors when it brought them into the MSPA's purview. *Id.* Finally, the court noted that applying the "provision to lawsuits brought by private parties essentially relegates the private cause of action to a super-judgment enforcement mechanism, and no plausible explanation exists for why Congress would have sought to limit it in that way." *Id.* Following discussion of these five factors, the *Bio-Medical* opinion concluded that, when Congress amended the MSPA in 2003, it intended to permit lawsuits against tortfeasors only by Medicare, and not by private parties. *Id.* at 292-93.

Osborne does not grapple with any of these factors in his brief. Instead, he simply points out that this statement in *Bio-Medical* was not essential to the holding of the case and, instead, was dicta. *See id.* at 299-300 (White, J. concurring). It is true that neither party in the case being decided was a tortfeasor—the court explained the limits of the demonstrated responsibility provision because of the "widespread confusion" it had caused among district courts. *Id.* at 292.**[5]**

And there exist grounds to view the *Bio-Medical* dicta with skepticism. Recall: the opinion explains tortfeasors were included as "primary plans" with amendment of the MSPA. *Id.* at 289-90. As Judge White points out in her concurrence with the *Bio-Medical* majority, the private cause of action allows one to proceed against "primary plans." *Id.* at 299 ("the provision

---

**[4]**This point may not be as instructive as the *Bio-Medical* court indicated because the private cause of action is also governed by the relationship between a primary payer and Medicare—the cause of action rests on Medicare's failure to be reimbursed as required. 656 F.3d at 286-87.

**[5]**So far, we have discussed two conclusions of the *Bio-Medical* court: (1) that the demonstrated responsibility provision applies only to tort actions, and (2) that the provision only applies to Medicare, and not individuals. While the latter is decidedly dicta, the former is more central to *Bio-Medical*'s holding. There, the court addressed an argument that the demonstrated responsibility provision disposed of the lawsuit. The primary payer had not been demonstrated responsible by a previous judgment, but also was not a tortfeasor. Thus, the court concluded the demonstrated responsibility provision was inapplicable. *Id.* at 291.

permitting a private action . . . does not exclude tortfeasors from the definition of primary plan or except primary plans whose liability is based in tort."). Perhaps the *Bio-Medical* majority would rest on its observation that the circumstances surrounding the amendment still show that Congress meant only for Medicare to proceed against tortfeasors; after all, Congress at the same time added the demonstrated responsibility provision, which applies to suits against tortfeasors and, as discussed above and below, seems incompatible with a private right of action. But it would have been nice for Congress to have explained explicitly.

### B.  Bio-Medical*'s Holding Applied to This Case*

Ultimately, *Bio-Medical* provides an exhaustive account of the MSPA, and provides dicta that is directly on point for our case. While not controlling, its reasoning is persuasive. Bifurcating the demonstration of a tortfeasor's liability (*i.e.*, through a suit in state court) and then allowing that private party to bring an MSPA claim surely was not Congress's intent—it would lead to very odd results.

Consider Osborne's claimed injury in this case: he had to pay co-pays that should have been borne by Metro Nashville, and he incurred litigation costs to demonstrate it. As to co-pays, we know that the state court judgment attached to Osborne's original complaint shows that he recovered $54,566.94 in itemized medical expenses. Here, Osborne does not claim that his co-pays were more than what he recovered in the state court judgment.**[6]** Further, attorney's fees or costs arising from prior litigation alone do not usually open the doors to federal court. *See, e.g.*, *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 480 (1990) ("[i]nterest in attorney's fees is, of course, insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim"). Defendants in Metro Nashville's position no doubt will argue that claims for fees, costs, and co-pays could, and should, have been brought in the underlying state court suit. When the judgment from that suit is paid, it is difficult to see how Osborne remains injured in the way he claims here, or that this court can redress such an injury.

---

**[6]**In fact, Osborne claims that the amount he paid in co-pays is immaterial to this case "because the available remedy under the MSPA is the double damages provision."

And to the extent Osborne claims Metro Nashville has not yet satisfied that judgment, *Bio-Medical* warned of this exact scenario: use of the MSPA as a super-judgment enforcement mechanism. The *Bio-Medical* court explained:

> [W]hy would Congress include a private cause of action within a statutory scheme but then limit its use to situations in which the defendant's liability has already been legally demonstrated? Assuming that a primary plan's responsibility to pay is generally demonstrated by a judgment, then the private cause of action (with its provision for double damages) is morphed into a super-judgment enforcement mechanism: when a primary plan is adjudged liable . . . but obstinately refuses to pay the judgment, the plaintiff can file a new cause of action so that the primary plan is *really* forced to pay. But why would Congress think such an unusual mechanism to be necessary here? Why is the typical judicial process for executing judgments insufficient? No answer is given . . . .

*Id.* at 288.

Here, Osborne has already obtained a judgment against Metro Nashville in state court. Since he claims Metro Nashville has not paid that judgment, he comes to federal court in an effort to collect (doubly). He has not offered any defense to the *Bio-Medical* court's reasoning that the MSPA is not intended for such use. And his citation to other Sixth Circuit cases shines little light on the issue, since those cases did not involve private actions against tortfeasors. *See Duncan v. Liberty Mut. Ins. Co.*, 745 F. App'x 575 (6th Cir. Aug. 16, 2018) (insured proceeding against automobile insurer); *Gucwa v. Lawley*, 731 F. App'x 408 (6th Cir. Apr. 16, 2018) (employee proceeding against workers' compensation administrator); *Mich. Spine and Brain Surgeons, PLLC v. State Farm Mut. Auto. Ins. Co.*, 758 F.3d 787 (6th Cir. 2014) (health care provider proceeding against nongroup health insurance plan).

Put simply, *Bio-Medical*'s conclusion appears prudent. In the tort context, the Medicare beneficiary's injury will likely have been redressed by a state court judgment, and allowing that same injury in federal court risks turning the MSPA into a super-judgment enforcement mechanism. Surely Congress did not intend for such a result when it, albeit confusingly, amended the MSPA. Instead, this reading is consistent with what this court has previously explained was Congress's purpose: Medicare's recovery. *Bio-Medical*, 656 F.3d at 289-93. Medicare's injury remains after the tortfeasor has been demonstrated to have responsibility, and

Medicare has been provided a mechanism to recover conditional payments from the primary payer or an entity paid by the primary payer.  42 U.S.C. § 1395y(b)(2)(B)(ii)-(iii).

One wrinkle remains:  what about private parties other than the Medicare beneficiary who were harmed by the tortfeasor's refusal to pay (*i.e.*, a hospital that footed the bill because the beneficiary was neither paid upfront by the tortfeasor, nor conditionally paid the full amount by Medicare)?  We noted earlier that, because his injury has been redressed in state court, Congress surely would not mean for a beneficiary to bring an MSPA claim once he has demonstrated responsibility.  But the hypothetical hospital stands in a different position:  its injury would not have been redressed, the tortfeasor's liability would have been demonstrated, and Medicare might not yet have been paid.  Could the hospital bring an MSPA claim?  *Bio-Medical* blanketly says no.  656 F.3d at 293.

Perhaps that is right.  But the case is not before the Court.  Here, Osborne cannot proceed because he is a Medicare beneficiary and now attempts to sue the tortfeasor under the MSPA, something we persuasively foreclosed in *Bio-Medical*.

**AFFIRMED**.