RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 21a0130p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
───────────────

RIVER CITY FRATERNAL ORDER OF POLICE LODGE
614, INC.; JOHN W. ARNOLD; JAMES DAVID WOOD;
GARY W. SIMKINS; JAMES K. LARKIN,

      *Plaintiffs-Appellees/Cross-Appellants*,

WILLIAM M. KERRICK,

      *Intervenor-Appellee*,

    *v.*

KENTUCKY RETIREMENT SYSTEMS, by and through its
Board of Trustees,

      *Defendant-Appellant/Cross-Appellee*.

Nos. 20-5773/5778

───────────────

Appeal from the United States District Court
for the Eastern District of Kentucky at Frankfort.
No. 3:17-cv-00102—William O. Bertelsman, District Judge.

Argued:  April 27, 2021

Decided and Filed:  June 8, 2021

Before:  SUTTON, Chief Judge; CLAY and McKEAGUE, Circuit Judges.
───────────────

## COUNSEL

**ARGUED:**  Peter M. Cummins, FROST BROWN TODD LLC, Louisville, Kentucky, for
Appellant/Cross-Appellee.  David Leightty, PRIDDY, CUTLER, NAAKE & MEADE, PLLC,
Louisville, Kentucky, for Appellees/Cross-Appellants. **ON BRIEF:**  Peter M. Cummins, Griffin
Terry Sumner, Samuel W. Wardle, FROST BROWN TODD LLC, Louisville, Kentucky, for
Appellant/Cross-Appellee.  David Leightty, PRIDDY, CUTLER, NAAKE & MEADE, PLLC,
Louisville, Kentucky, for Appellees/Cross-Appellants.

     SUTTON, C.J., delivered the opinion of the court in which McKEAGUE, J., joined.
CLAY, J. (pp. 13–21), delivered a separate opinion concurring in part and dissenting in part.

———————————————

**OPINION**

———————————————

SUTTON, Chief Judge.  Kentucky guarantees free health insurance to public servants who meet the age and years-of-service requirements.  When several police officers reached the requisite age under Kentucky law, they retired and began collecting a pension and obtaining free health insurance.  Before long, they each came out of retirement, started working for a different state agency, began drawing a new salary, and kept their healthcare.  Or so they thought.  Kentucky cancelled their health insurance and required them to pay the premiums for the insurance plan offered by their new state employer.  The officers sued, claiming that the Commonwealth violated its commitment to provide free healthcare and that this broken promise violated state law.  Kentucky defended the lawsuit on a single ground:  Federal Medicare law made the Commonwealth do it.  The district court granted summary judgment to the officers.  It ordered Kentucky to reinstate the officers' insurance and to pay retroactive money damages.  We affirm the order of reinstatement, affirm the damages awards premised on newly incurred insurance premiums, and vacate and remand for further consideration the awards premised on lost wages.

I.

Over the last three decades, police officers John Arnold, James Wood, Gary Simkins, James Larkin, and William Kerrick retired from the Louisville Metropolitan police department.  Before and after their service, they belonged to the River City Fraternal Order of Police Lodge 614 union.  Upon retirement, each of them received free health insurance through the Jefferson County Employees Retirement System, administered by Kentucky Retirement Systems.  Kentucky initially paid all of their healthcare costs.  After the officers turned 65, Medicare took over as the primary payer, leaving Kentucky to cover any secondary expenses.

One by one, the officers came out of retirement.  They each joined county agencies different from the ones they served before retiring, and they each earned new salaries on top of their retirement pensions.  They also became eligible for the healthcare benefits of these new positions.

In 2017 or so, Kentucky discovered that the officers had reentered the workforce. It sent the officers letters informing them that federal law "mandate[d]" that it "cannot offer coverage secondary to Medicare" for retirees "eligible to be on [their] employer's group health plan" as "active employees." R.21-4 at 1. Kentucky explained that it would have to end the officers' retirement health insurance for the duration of their reemployment. What presumably saved money for the Commonwealth—the record does not say—became a loss for each retiree. Some of the officers decided to pay for insurance through their new employers, while others decided to keep their retirement insurance by quitting their new job or going part-time in it.

The officers sued the Kentucky Retirement Systems in state court. They brought a state law contract claim and a federal statutory claim under the Medicare Secondary Payer Act. Kentucky removed the case to federal district court. The district court granted summary judgment to the officers on their state law claim and to Kentucky on their federal law claim. It ordered Kentucky to reinstate their retirement health insurance, and it awarded the officers some, but not all, of the monetary damages requested. Kentucky appeals. The officers cross appeal the district court's partial denial of damages.

## II.

This appeal raises two questions: Do the officers have a cognizable breach-of-contract claim against Kentucky under state law? If so, what remedy does state law allow?

*Did the Kentucky Retirement Systems breach its contract with the police officers*? Yes. Under Kentucky law, the Kentucky Retirement Systems (Kentucky for short) formed an "inviolable contract" with the officers to provide free retirement health insurance and to refrain from reducing their insurance benefits. K.R.S. §§ 78.852(1), 78.545(35) (2017). By ending the officers' retirement insurance, Kentucky breached that contract.

At one level, Kentucky admits as much. It acknowledges that the officers became eligible for this benefit through their years of service. It acknowledges that the contract vested upon the officers' retirement with the appropriate years of service. It does not deny that the officers may obtain new employment without undoing the existing retirement contract. And it does not deny

that Kentucky waived its sovereign immunity for breach-of-contract claims like this one. K.R.S. § 45A.245; *Commonwealth v. Ky. Ret. Sys.*, 396 S.W.3d 833, 837 (Ky. 2013).

But Kentucky claims that it may avoid the implications of these confessions on one overriding ground: Federal law made it do it. As the Commonwealth sees it, the Medicare Secondary Payer Act of 1980 bars it from providing Medicare-eligible police officers with state retirement insurance after they reenter the workforce and become eligible again for employer-based insurance coverage. *See* 42 U.S.C. § 1395y. One premise of this argument is correct. The Supremacy Clause bars Kentucky from violating federal law. U.S. Const. art. VI, cl. 2. But the conclusion is not.

The Secondary Payer Act does not bar Kentucky from providing these reemployed police officers with this retirement insurance. Nothing in the Act or Medicare itself directs a state to remove a retiree's contract-based insurance plan. Federal law, it is true, permits the retiree to make Medicare the primary insurer, and the state plan the secondary insurer, at age 65. But it does not require the State to remove someone from their free insurance plan and force them to pay new premiums on the ground that they have come out of retirement.

The key provision invoked by Kentucky imposes no such mandate. It says that a "group health plan" (like Kentucky's retirement insurance plan) may not "take into account that an individual" is eligible for Medicare if the individual "is covered under the plan by virtue of the individual's current employment status." 42 U.S.C. § 1395y(b)(1)(A)(i)(I). The point of the provision is to prohibit insurance plans from discriminating against Medicare-eligible individuals by, say, ending their coverage or reducing their benefits once they become eligible for Medicare. *See Bio-Medical Applications of Tenn., Inc. v. Cent. States Se. & Sw. Areas Health & Welfare Fund*, 656 F.3d 277, 282 (6th Cir. 2011). Consistent with a key goal of the Secondary Payer Act—to lower financial burdens on Medicare—the "take into account" provision reduces government expenses by requiring private insurers to foot the bill even if the covered individual is eligible for Medicare. *See Osborne v. Metro. Gov't of Nashville & Davidson Cnty.*, 935 F.3d 521, 523 (6th Cir. 2019).

But this provision does not justify Kentucky's actions because it does not apply to these retired police officers. They are not "covered under" the Kentucky plan "by virtue" of their "current employment status with an employer." 42 U.S.C. § 1395y(b)(1)(A)(i)(I). To have "current employment status," an individual must be "an employee" or be "associated with the employer in a business relationship." *Id.* § 1395y(b)(1)(E)(ii). That does not describe the officers in the retirement plan. They are not covered by virtue of being "employee[s]" or "associated" with an employer "in a business relationship." Truth be told, Kentucky's retirement plan covers them by virtue of their *non*-employment. The "take into account" provision prohibits a plan from considering a person's eligibility for Medicare, not his or her eligibility for other plans.

It makes no difference that Kentucky "take[s] into account" Medicare eligibility in one sense. Once retirees become Medicare eligible, Kentucky stops providing primary insurance and instead covers only what Medicare does not. But that is permissible because Kentucky's retirement insurance plan does not cover anyone "by virtue of the individual's current employment status with an employer." *Id.* § 1395y(b)(1)(A)(i)(I). Nor does any of this change when retirees reenter the workforce. While reemployed retirees may have "current employment status" once again, they do not receive their *retirement* insurance "by virtue" of that status. They receive retirement insurance by virtue of being retired.

Precedent follows the lead of the text. In *Baptist Memorial Hospital v. Pan American Life Insurance Co.*, a retired postal worker held insurance both through a federal retirement plan and through his wife's employer. 45 F.3d 992, 993 (6th Cir. 1995). Under his retirement insurance, Medicare was the primary payer. *Id.* at 996. When the retiree was hospitalized, his two insurance providers disputed who should foot the bill. *Id.* at 993. The insurance contracts made the retirement insurance liable. *Id.* at 995–96. The Secondary Payer Act, we held, did not affect the arrangement. *Id.* at 996–98. Because the retirement insurance plan did "not cover [the retiree] by reason of his current employment," the plan could "make its coverage secondary to Medicare's." *Id.* at 996. Yes, the retiree had access to insurance under which Medicare was not the primary insurer (through his wife's employment). *Id.* But that did not mean that his retirement plan, under which Medicare paid primary coverage, could escape its contractual obligation to pay for his healthcare. *Id.* That is essentially this case.

Other circuits are like-minded.  The Eleventh Circuit holds that, when an insurer covers an individual "as an inactive former employee and not as a result of her current employment status," the Medicare Secondary Payer statute does "not prevent" the insurer "from making its coverage secondary to Medicare."  *Harris Corp. v. Humana Health Ins. Co. of Fla., Inc.*, 253 F.3d 598, 601 (11th Cir. 2001).  The Fifth Circuit holds that the Act "prohibit[s] employers from designating Medicare as the primary payer for active employees—the working aged—but not for retirees." *Hammack v. Baroid Corp.*, 142 F.3d 266, 270 (5th Cir. 1998).  No case to our knowledge, or to the parties' evident knowledge, goes the other way.

Kentucky pushes back on several fronts.  It claims that the "take into account" provision applies to these officers' retirement insurance because they may receive other insurance coverage due to their reemployment.  By Kentucky's lights, the provision applies to any insurance covering a Medicare-eligible individual who is working, not just insurance provided because of that employment, given the Act's goal of reducing Medicare costs.  But the provision says that a "group health plan . . . may not take into account that an individual (or the individual's spouse) who is covered under the plan by virtue of the individual's current employment status with an employer" is eligible for Medicare.  42 U.S.C. § 1395y(b)(1)(A)(i).  Kentucky's retirement insurance plan does not illegally discriminate against the officers on the basis of Medicare eligibility because they are not covered under that plan by virtue of their current employment status.  That they could obtain coverage under a different plan through their new employer (and pay the requisite premiums) is beside the point when it comes to the Act's strictures and to what Kentucky's retirement insurance plan may do.

Kentucky adds that the officers receive their retirement health insurance "by virtue of [their] current employment" because they currently work for the same employer that they worked for before retiring:  Jefferson County.  But in truth the officers work for different agencies within Jefferson County from the agencies that employed them before retirement.  That the same public retirement system (or the same county) may provide benefits for many public servants does not make it the employer of each of them.  Even if that were not the case, even if the various Jefferson County law enforcement agencies should be treated as one employer, it is by no means clear that Kentucky's conclusion follows.  The claimants' retirement health insurance remains a benefit of

their former employment, not their current employment. And no one denies that they would be eligible for the same insurance whether they obtained new employment or not.

Kentucky invokes a federal regulation for further support. "A reemployed retiree," it says, "who is covered by a [group health plan] and who performs sufficient services to qualify for coverage on that basis (that is, other employees in the same category are provided health benefits) is considered covered 'by reason of current employment status' even if: (1) The employer provides the same [group health plan] coverage to retirees; or (2) The premiums for the plan are paid from a retirement or pension fund." 42 C.F.R. § 411.172(d). But the regulation does not prove Kentucky's point for a few reasons.

One, the regulation says that, to be considered covered "by reason of current employment status," a reemployed retiree must "perform[] sufficient services to qualify for coverage" under their group health plan. But these officers do not "perform" any "services" to qualify for their retirement insurance. They qualify by meeting pre-existing requirements for obtaining retirement healthcare. Two, the regulation seems to contemplate a situation in which the individual returns to the same employer after retirement. As shown, that is not the case here. Each employee works for a distinct county agency, so distinct that some of the agencies have their own constitutional status. *See* Ky. Const. § 99 (establishing the offices of county attorney, sheriff, and coroner, among others). Three, what the regulation seems to be worried about—an employee continuously working with an employer but asked to take "retirement" status at 65 to offload the individual from the company's insurance plan—did not happen here. Four, even if all of this were not the case, the agency has no authority to promulgate a regulation that undoes the unambiguous language of the statute—which applies only when the employee is "covered under" the Kentucky plan "by virtue" of their "current employment status with an employer," as opposed to their retirement status. 42 U.S.C. § 1395y(b)(1)(A)(i)(I); *see Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842–43 (1984).

Another regulation, the Commonwealth adds, also supports its position. It says that "coverage by virtue of current employment status" applies to an "individual [who] has [group health plan] . . . coverage based on employment, including coverage based on a certain number of

hours worked for that employer or a certain level of commissions earned from work for that employer at any time." 42 C.F.R. § 411.104(c)(1). Kentucky claims that the officers' retirement insurance coverage is "by virtue of current employment status" because it is "based on a certain number of hours worked for that employer . . . at any time," namely the hours worked pre-retirement. *Id.* But this would mean that *any* retirement insurance coverage is "by virtue of current employment status," laying waste to *Baptist Memorial*, 45 F.3d at 996, *Harris*, 253 F.3d at 601, and *Hammack*, 142 F.3d at 270, all of which explain that the "take into account" provision does not apply to retirement insurance.

Last of all, Kentucky points to an email from the Centers for Medicare & Medicaid Services. The email "respond[s] to [Kentucky's] question concerning re-employed retirees." R.35-1 at 2. It says that the "taking into account" provision "prohibits employer group health plans from continuing to offer retiree coverage in the form of a [Medicare-primary] plan to a re-employed (with the same employer) Medicare eligible employee." *Id.* Kentucky claims that this interpretation deserves deference under *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944). One problem with reliance on this email should be familiar by now: It assumes the retirees worked for the "same employer." That is not the case. After retirement, they each worked for public entities different from the ones they worked for before retirement. Another problem is that this one-line declaration does not evince the kind of "thoroughness" of "consideration" or "valid[]" "reasoning" associated with *Skidmore*. *Id.* at 140.

Kentucky also invokes the "anti-incentive" provision of the Act, arguing that the provision independently required it to terminate the officers' insurance. The provision makes it "unlawful for an employer or other entity to offer any financial or other incentive for an individual entitled to [Medicare] not to enroll (or to terminate enrollment) under a group health plan . . . which would (in the case of such enrollment) be a primary plan." 42 U.S.C. § 1395y(b)(3)(C). But Kentucky forfeited the argument by failing to raise it in the district court. *See Guyan Int'l, Inc. v. Pro. Benefits Adm'rs, Inc.*, 689 F.3d 793, 799 (6th Cir. 2012). Even on appeal, at any rate, it does not explain why this provision operates differently from the "take into account" provision when it comes to its applicability to retirement insurance supplied to retirees who reenter the workforce for new employers.

Because the Secondary Payer Act does not require Kentucky to terminate the officers' health insurance, the Commonwealth violated its state law obligation not to "reduc[e] or impair[]" the officers' retirement benefits. K.R.S. § 78.852(1). Kentucky legislators, it is worth adding, retain the authority to require retirees to obtain primary insurance coverage from new employers (and pay the premiums that go with it) when they reenter the workforce. All they need to do is to amend the Kentucky retirement laws to alert public servants that their free health insurance upon retirement comes with this caveat and in some instances thus will not be free. What they cannot do is stay silent about the caveat, then deny free health insurance on the inaccurate ground that Medicare made them do it.

*What are the proper remedies for this breach of contract*? No one objects to one feature of the district court's remedial order—its injunction that Kentucky reinstate the officers to their insurance plans. What divides the parties is the district court's damages awards. With respect to Arnold, Wood, and Larkin, who each joined their new employers' insurance plans, it awarded damages premised on the health insurance premiums they had to pay under those plans. And it awarded Simkins and Arnold lost wages incurred due to employment decisions they made after Kentucky removed them from their existing retirement insurance plan.

As an agency of the Commonwealth, the Kentucky Retirement Systems retains immunity from lawsuits. *Ky. Ret. Sys.*, 396 S.W.3d at 837. While Kentucky may waive that immunity by statute, Ky. Const. § 231, any such waiver must be "specific and explicit," *Commonwealth v. Whitworth*, 74 S.W.3d 695, 699 (Ky. 2002), and will be enforced "only where stated by the most express language or by such overwhelming implications from the text as will leave no room for any other reasonable construction," *Withers v. Univ. of Ky.*, 939 S.W.2d 340, 346 (Ky. 1997) (quotations and alteration omitted). Any award is limited to twice the "amount of the original contract." K.R.S. § 45A.245(2).

Kentucky admits that it waived its immunity against lawsuits "for breach of contracts or for enforcement of contracts" when the contract is "a lawfully authorized written contract with the Commonwealth." *Id.* § 45A.245(1). It has no quarrel with the idea that the "inviolable contract" to not reduce public retirees' benefits, *id.* § 78.852(1), is a "written contract" encompassed by this

immunity waiver. *Ky. Ret. Sys.*, 396 S.W.3d at 838. Kentucky also acknowledges that this waiver extends to this action in federal court—even an action premised on state law, *see Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984)—because it voluntarily removed the case to federal court. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 616 (2002).

Does Kentucky's waiver of immunity, then, extend to these two types of damages awards: the cost of premiums paid for replacement insurance plans and lost wages? Does each award come within a "specific and explicit" waiver that is no more than twice the "amount of the original contract"? Yes and No.

*New premiums*. Kentucky has waived its immunity for a damages award premised on a replacement insurance policy that requires the retiree to incur new premiums. In one sense, it is true, the retirement contract does not reduce its promise of free insurance—what counts as no premiums—to an "amount" of money. But that does not interfere with the waiver so long as it is perfectly clear what the value of the promise is.

Think about it this way. Say Kentucky law gave public servants a pension upon retirement. Say the law calculated the pension in this way: number of years of service times the retiree's final salary. Technically speaking, it might be said that the obligation did not include an explicit amount of money in the contract. But there is no doubting what the amount is, and surely that would suffice to meet Kentucky's strict immunity waiver.

The contract in this case contains similar clarity. It obligates Kentucky not to "reduc[e] or impair[]" the officers' retirement benefits, which include a "medical insurance plan." K.R.S. §§ 78.852(1), 78.545(35) (2017). And it obligates the Commonwealth to provide "[t]he premium required to provide hospital and medical benefits . . . [i]n full." *Id.* § 61.702(3)(a)(6). No less than the pension contract, this contract for free health insurance provides a discernible, clearly known amount: the cost of the insurance premiums. That is just what several of the plaintiffs—Arnold, Wood, and Larkin—sought, and understandably so. It is true that these retirees did not sign up for the Kentucky retirement plan and pay *that insurance premium*. But that is because the Commonwealth would not let them. So long as the premium they seek to recover is not twice the

amount of the contract—and Kentucky makes no such argument—it comes within the Commonwealth's waiver of sovereign immunity.

*Lost wages*.  The same is not true for the lost wages awarded to Simkins and Arnold premised on their decisions to forgo other work due to Kentucky's position that federal law would require the Commonwealth to remove them from the retiree health insurance plan.  In this respect, the two officers did not seek the value of replacement insurance, the item covered by the contract.  They sought lost wages, which is not what this contract is about or the amount that it covers.  This type of unenumerated consequential damages award does not satisfy the requirement of "the most express language" or of "such overwhelming implications from the text" that there is "no room for any other reasonable construction."  *Withers*, 939 S.W.2d at 346 (quotation omitted).

Trying to fend off this conclusion, the officers point to two cases that purport to cut the other way.  One of them, *Hogan v. Long*, says that "[t]he measure of damages for breach of contract is that sum which will put the injured party into the same position he would have been in had the contract been performed."  922 S.W.2d 368, 371 (Ky. 1995) (quotation omitted).  The other, *Curry v. Bennett*, says that recoverable damages include those which "may fairly and reasonably be considered as arising naturally—that is according to the usual course of things—from the breach of the contract itself."  301 S.W.3d 502, 506 (Ky. Ct. App. 2009) (quotation omitted).  Taken together, say the officers, the two cases permit these damage awards because, if the contract had been performed, they never would have forgone wages in other jobs to keep their retirement insurance.  Because the costs "ar[ose] naturally" from the breach of the contract, the officers claim they are entitled to them as part of their remedy.  *Id.*

But neither case deals with the problem at hand:  the extent to which Kentucky's waiver of immunity applies to consequential damages so removed from the underlying contract.  That an ordinary breach-of-contract claim might allow for far-ranging consequential damages does not mean that a waiver of immunity covers them.  The retirement contract obligates the Commonwealth to provide free retirement insurance, not to pay unascertainable consequential damages if it does not.  The officers do not cite any immunity case awarding damages remotely

comparable to what they seek here or that suggests the waiver imperative—both explicit and specific—would apply to lost wages of this sort.

That said, Simkins and Arnold remain free to seek damages that align with the reach of Kentucky's explicit waiver of immunity. At the same time that we vacate any damage awards premised on lost wages, we will remand the case to the district court to give these two officers an opportunity to seek damages for this breached contract premised on replacement health insurance premiums.

We affirm the district court's grant of summary judgment on the merits, affirm the district court's awards of damages for newly incurred premium payments, and vacate its awards of lost wages and remand for further consideration.

---

**CONCURRING IN PART AND DISSENTING IN PART**

---

CLAY, Circuit Judge, concurring in part and dissenting in part. The majority correctly affirms the district court's judgment that Defendant Kentucky Retirement Systems ("Kentucky") violated its contract with Plaintiffs to provide them with health coverage and to pay their health insurance premiums. I write separately because the majority's limit on the damages that may be awarded as a result of that breach misconstrues the district court's damages awards and has no basis in Kentucky law.

## I. District Court's Damages Awards

The district court awarded damages to Plaintiff John W. Arnold totaling $9,594.48, to Plaintiff Gary W. Simkins totaling $83,168.98, to Plaintiff James K. Larkin totaling $6,181.92, and to Plaintiff James David Wood totaling $4,033.61.[1] The majority properly affirms the awards for the premiums Arnold, Larkin, and Wood paid for replacement health insurance plans.

The majority also purports to vacate "the lost wages awarded to Simkins and Arnold premised on their decisions to forgo other work due to Kentucky's position that it would require the Commonwealth to remove them from the retiree health insurance plan." Majority Op. at 11. As applied to Simkins, the majority's disposition, while erroneous as a matter of Kentucky law for the reasons explained below, is relevant to the district court's judgment, which awarded Simkins $83,168.98 in lost wages.

On the other hand, there is simply no lost wages award for Arnold for this Court to vacate. Majority Op. at 12 ("vacat[ing the district court's] awards of lost wages"). The district court

---

[1]The district court declined to grant Intervenor William M. Kerrick monetary relief because he did not submit a request for compensatory damages. It should be noted that the majority opinion does not distinguish between Plaintiffs and Kerrick with respect to the district court's grant of equitable relief in the form of a permanent injunction, although Kerrick has declined to participate in this appeal. "[A] favorable judgment on appeal" must be defended. *Riley v. Kurtz*, 361 F.3d 906, 917 (6th Cir. 2004). I would vacate the district court's injunction to reinstate Kerrick's prior health insurance due to his failure to appear in this appeal.

declined to grant Arnold's request for $80,721.57 in lost wages. In fact, the decision not to grant Arnold lost wages is the sole issue raised in Plaintiffs' cross-appeal.

The district court did award Arnold two types of compensatory damages, but neither of those were lost wages. First, Arnold was awarded $3,090.48 to cover premiums he paid when Kentucky canceled his health insurance coverage in 2016. The majority affirms this portion of Arnold's damages award. Second, in lieu of lost wages, the district court awarded Arnold $6,504.00, which represents the costs of premiums he would have paid from 2017 to 2019 had he not left his job in an effort to maintain his retirement health insurance. The majority's position on this latter award of $6,504.00 is unknown.[2]

## II. Limits on Damages Under Ky. Rev. Stat. § 45A.245

The majority also errs by imposing a limit on the damages available to remedy Kentucky's breach of contract that has no basis in the statute at issue in this case, Ky. Rev. Stat. § 45A.245.

With Ky. Rev. Stat. § 45A.245, Kentucky waived sovereign immunity for "actions . . . for breach of contract[]" based on "a lawfully authorized written contract with the Commonwealth . . . ." Ky. Rev. Stat. § 45A.245(1). It is undisputed that the "inviolable contract" under Ky. Rev. Stat. § 78.852 that Kentucky breached in this case is a "written contract" for purposes of Ky. Rev. Stat. § 45A.245. *See Commonwealth v. Ky. Ret. Sys.*, 396 S.W.3d 833, 838 (Ky. 2013). Section 45A.245 imposes one limit on the damages available from Kentucky that does not apply to other contract claims—"[i]f damages awarded on any contract claim under this section exceed the original amount of the contract, such excess shall be limited to an amount which is equal to the amount of the original contract." Ky. Rev. Stat. § 45A.245(2). That is, damages in a breach of contract case against Kentucky cannot exceed twice "the amount of the original contract."

In rejecting the district court's award of lost wages, the majority misapplies general principles of sovereign immunity to limit the damages recoverable in this action. Once the

---

[2]The majority's remand instruction that "damages for this breached contract premised on replacement health insurance premiums" seems to support affirming the district court's damages award to Arnold in its entirety. Majority Op. at 12.

majority finds that Ky. Rev. Stat. § 45A.245 waived Kentucky's sovereign immunity as to Plaintiffs' contract claims, it is unclear why sovereign immunity would impact the damages analysis.

The majority opinion is directly contrary to the Kentucky Court of Appeals' decision in *University of Louisville v. RAM Engineering & Construction, Inc.*, 199 S.W.3d 746 (Ky. Ct. App. 2005). In *RAM Engineering*, the court was presented with the question of whether an award of prejudgment interest in an action for breach of contract under Ky. Rev. Stat. § 45A.245 was appropriate. The Kentucky Court of Appeals affirmed the interest award and concluded that "[t]he General Assembly waived sovereign immunity for contract actions with the enactment of KRS 45A.245. The only limitation on damages is that they cannot exceed twice the original amount of the contract." *Id.* at 749 (footnotes omitted). The court explicitly found that "unenumerated consequential damages," which the majority asserts are barred by sovereign immunity, were appropriate. Majority Op. at 11; *see RAM Eng'g & Constr.*, 199 S.W.3d at 748 (describing how "[i]nterest for breach of a contract to pay a certain sum is recoverable as consequential (general) damages").

*RAM Engineering* rejected the fundamental premise of the majority opinion that Kentucky's waiver of sovereign immunity under Ky. Rev. Stat. § 45A.245 only permits certain types of damages, such as paid premiums, while excluding others, like lost wages. *RAM Engineering* held that Ky. Rev. Stat. § 45A.245's "waiver of sovereign immunity does not distinguish between the types of damages but puts a cap on total damages." *RAM Eng'g & Constr.*, 199 S.W.3d at 749. *RAM Engineering* also specifically denies the majority's assertion that *Hogan v. Long*, 922 S.W.2d 368 (Ky. 1995), does not apply when a court is calculating damages under Ky. Rev. Stat. § 45A.245. *See RAM Eng'g & Constr.*, 199 S.W.3d at 748 (citing *Hogan v. Long*, 922 S.W.3d at 371). Plaintiffs cited *Hogan* for the proposition that "[t]he measure of damages for breach of contract is 'that sum which will put the injured party into the same position he would have been in had the contract been performed,'" as did the Kentucky Court of Appeals in *RAM Engineering*. *Hogan*, 922 S.W.2d at 371 (quoting *Perkins Motors, Inc. v. Autotruck Fed. Credit Union*, 607 S.W.2d 429, 430 (Ky. Ct. App. 1980)).

*RAM Engineering* is entitled to substantial deference. "Though the [Kentucky Supreme Court] has not squarely addressed the issue, when 'an intermediate appellate state court rests its considered judgment upon the rule of law which it announces, that is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *Church Joint Venture, L.P. v. Blasingame*, 947 F.3d 925, 932 (6th Cir. 2020) (quoting *West v. AT&T*, 311 U.S. 223, 237 (1940)). No such persuasive data has been presented by the majority.

*Commonwealth v. Whitworth*, 74 S.W.3d 695 (Ky. 2002), which the majority quotes for the proposition that any waiver of sovereign immunity must be "specific and explicit," does not require disregarding *RAM Engineering*. *Id.* at 699. In *Whitworth*, the Kentucky Supreme Court found that sovereign immunity barred claims based on oral contracts against the state. It concluded that Ky. Rev. Stat. § 45A.245(1) was of no help to the plaintiffs there because the provision only "waives sovereign immunity for a lawfully authorized written contract." *Id.* Although not at issue before the Kentucky Supreme Court, there is absolutely no suggestion in *Whitworth* that any further "specific and explicit" waiver of sovereign immunity is needed for particular types of damages under Ky. Rev. Stat. § 45A.245. Similarly, *Withers v. University of Kentucky*, 939 S.W.2d 340, 346 (Ky. 1997), which the majority repeatedly quotes for the related proposition that a waiver of sovereign immunity must be express, also does not require limiting damages in this case. There is no dispute that Ky. Rev. Stat. § 45A.245 expressly waived Kentucky's sovereign immunity for actions on written contracts; therefore, the requirements of both *Whitworth* and *Withers* are met in this case.

In fact, decisions of the Kentucky Supreme Court offer strong support for *RAM Engineering*'s interpretation of Ky. Rev. Stat. § 45A.245. In *University of Louisville v. Rothstein*, 532 S.W.3d 644 (Ky. 2017), the Kentucky Supreme Court, in interpreting Ky. Rev. Stat. § 45A.245, concluded "[t]he legislature chose to utilize this language, without restriction or limitation. There is no reason for us, therefore, to impose a constraint unintended or unexpressed by the General Assembly. Clearly, the legislature has waived governmental immunity on *all* claims brought by *all* persons on *all* lawfully authorized written contracts with the Commonwealth." *Id.* at 651. The majority opinion manufactures an "unexpressed" limit on the

types of contract claims that may be brought against Kentucky. That violates the Kentucky Supreme Court's decision in *Rothstein*.**[3]**

The foregoing discussion demonstrates that the majority opinion conflicts with Kentucky court decisions interpreting Ky. Rev. Stat. § 45A.245. But its analysis is also incompatible with the text of Ky. Rev. Stat. § 45A.245. The majority concludes "[t]hat an ordinary breach-of-contract claim might allow for far-ranging consequential damages does not mean that a waiver of immunity covers them." Majority Op. at 11. That statement is certainly true as a general matter—there is no reason why contract damages and a waiver of sovereign immunity would necessarily be identical in scope. However, that logic has no application here where Ky. Rev. Stat. § 45A.245 waives Kentucky's immunity "for breach of contract[] . . . ." Ky. Rev. Stat. § 45A.245. This provision does nothing more or less than allow those with written contracts, like Plaintiffs, to sue Kentucky on that contract. Accordingly, "[t]hat an ordinary breach-of-contract claim might allow for far-ranging consequential damages" means precisely that such damages are available in an action under Ky. Rev. Stat. § 45A.245.

## III. Damages Under Kentucky Contract Law

Under Ky. Rev. Stat. § 45A.245, Kentucky "waived its sovereign immunity for contract damages . . . ." *Cabinet & Family Servs. v. Appalachian Reg'l Healthcare*, 606 S.W.3d 623, 634 (Ky. 2019). The remaining question is whether the district court's damages awards "follow[ed] the rules of contract law, subject to the cap in KRS 45A.245(2)." *RAM Eng'g & Constr.*, 199 S.W.3d at 749. The district court's award of damages on a motion for summary judgment is reviewed *de novo*. *Sec'y of Lab. v. Timberline S., LLC*, 925 F.3d 838, 843 & n.3 (6th Cir. 2019).

The majority does not address Plaintiffs' arguments regarding Kentucky contract law, erroneously deeming them irrelevant to this breach of contract action under Ky. Rev. Stat. § 45A.245. As discussed above, the Kentucky Court of Appeals in *RAM Engineering* explicitly relied on *Hogan v. Long*, 922 S.W.2d 368, which the majority refused to consider, for the

---

**[3]**The *Rothstein* court recognized the explicit "limit [on] the amount of damages recoverable" imposed by Ky. Rev. Stat. § 45A.245(2). *Rothstein*, 532 S.W.3d at 647.

proposition that the proper measure of contract damages is the amount that would put an injured party in the position it would have been in had the defendant not breached. *RAM Eng'g & Constr.*, 199 S.W.3d at 748. Plaintiffs also cited *Curry v. Bennett*, 301 S.W.3d 502 (Ky. Ct. App. 2009), in support of their claim to damages "as may fairly and reasonably be considered as arising naturally—that is according to the usual course of things—from the breach of the contract itself . . . ." *Id.* at 506 (quoting *RAM Eng'g & Constr.*, 199 S.W.3d at 748).[4] There does not appear to be any dispute that *Hogan* and *Curry* accurately describe Kentucky law.

The district court's damages decisions were also based on one other uncontroverted principle of Kentucky contract law—that a party seeking damages for breach of contract has a duty to mitigate damages. *See Jones v. Marquis Terminal, Inc.*, 454 S.W.3d 849, 852 (Ky. Ct. App. 2014). For example, applying this principle led the district court to deny Arnold's request for lost wages.

The district court properly applied Kentucky contract law in this case with respect to all four Plaintiffs. Given that the majority correctly affirms the damages awards to Larkin, Wood, and, in part, Arnold, based on the premiums they paid to maintain alternative health insurance, the focus of the subsequent discussion will be on the award of Simkins' lost wages and Arnold's award for the premiums he would have paid had he remained employed.

If Kentucky had not breached its contract to pay Plaintiffs' health insurance premiums, Simkins would have been employed full-time with a commensurate salary, while at the same time receiving free health insurance. Accordingly, unless other principles of contract law or a statutory provision such as Ky. Rev. Stat. § 45A.245(2)'s cap on damages applies, Simkins would be entitled to damages up to the amount of his expected wages plus the amount of health insurance premiums that Kentucky was obligated to pay. That is the position he would have been in had Kentucky performed. *See Hogan*, 922 S.W.2d at 371. Simkins' decision to work part-time, which caused him to lose wages, arose naturally from Kentucky's breach; he modified his employment status so

---

[4]*Curry*, a contract case, quoted *RAM Engineering*, a Ky. Rev. Stat. § 45A.245 case, for this rule, further demonstrating that the distinction the majority draws based on sovereign immunity has absolutely no basis in Kentucky law.

he could maintain retirement health coverage for himself and his family. *Curry*, 301 S.W.3d at 506.

After reviewing evidence, the district court determined Simkins had mitigated damages because "the cost of comparable insurance exceeds what Plaintiff Simkins lost in wages by reducing his hours to part time, [so] purchasing alternative coverage was not in actuality an effective way to mitigate his damages. Simkins's decision to reduce his hours to part-time, though costly, was the best option in light of Defendant's threats to cancel his insurance coverage." *River City Fraternal Order of Police v. Ky. Ret. Sys.* ("June 3, 2020 Order"), No. 17-102, 2020 WL 2951074, at *1 (E.D. Ky. June 3, 2020). Kentucky does not dispute the district court's analysis, but only asserts that the district court relied on "speculative and unreliable evidence in calculating Mr. Simkins' purported lost wages." (Appellant/Cross-Appellee's Br. 51.) However, Kentucky's only argument to this effect—that an affidavit by a local insurance broker was impermissibly based on hearsay because it cited conversations with other insurance agents—is, as Plaintiffs point out, without merit. *See Trepel v. Roadway Express, Inc.*, 194 F.3d 708, 717 (6th Cir. 1999) (recognizing that expert opinion may be based on hearsay statements). The district court properly awarded Simkins $83,168.98 in lost wages due to Kentucky's breach.

The district court's analysis of Arnold's damages award was similar as for Simkins, except that it denied Arnold's request for lost wages, concluding that he had failed to mitigate damages when he left his position rather than paying health insurance premiums for alternative coverage. Contrary to Plaintiffs' arguments on appeal, the district court's conclusion that Arnold failed to mitigate was not erroneous. Arnold claims he mitigated damages by searching for alternative employment. However, the district court found that Arnold "could have mitigated his damages by purchasing insurance through the Jefferson County Sherriff's Department rather than quitting his job." June 3, 2020 Order, 2020 WL 2951074, at *1. Accordingly, Arnold's arguments about his search for alternative employment do not disturb the district court's mitigation determination, as the district court explained in its initial damages order. *See River City Fraternal Order of Police v. Ky. Ret. Sys.* ("February 18, 2020 Order"), No. 17-201, 2020 WL 806360, at *2 (E.D. Ky. Feb. 18, 2020) (finding that evidence of Arnold's search for alternative employment did not affect mitigation determination because "the decision to leave that position rather than purchase

insurance through the Sheriff's Office was unreasonable"). Additionally, the district court found that Arnold did not attempt to determine the cost of obtaining health coverage through his employer before leaving his position. The district court properly found that Arnold did not "use reasonable efforts to mitigate [his] damages occasioned by the other party's breach." *Deskins v. Estep*, 314 S.W.3d 300, 305 (Ky. Ct. App. 2010).

As explained above, the majority does not review the district court's award of $6,504.00 in premium costs Arnold would have paid had he remained employed. Nor does it appear that Kentucky challenges that award aside from its arguments that damages are not available in this case at all, an argument the majority rejects.

The award of the premiums Arnold would have paid for health insurance if he had remained employed in the amount of $6,504.00 was proper. The district court excluded from Arnold's award the amount of damages he suffered that he could have "avoided through the exercise of ordinary care" by remaining employed. *Insight Ky. Partners II, L.P. v. Preferred Auto. Servs., Inc.*, 514 S.W.3d 537, 551 (Ky. Ct. App. 2016).

For the reasons explained above, the district court's damages awards to Simkins and Arnold were consistent with Kentucky contract law. Since the district court was careful to set the awards at an amount equal to or less than Plaintiffs' health insurance premiums, the awards are also consistent with Ky. Rev. Stat. § 45A.245(2)'s requirement that any damages awarded under that section not exceed twice the amount of the contract.

## IV. Conclusion

Despite Kentucky's, and now the majority's, efforts to complicate the case, this appeal presents a relatively straightforward issue of breach of contract. Kentucky agreed to provide Plaintiffs health insurance and to pay their premiums in consideration of pension contributions and "in further consideration of benefits received by the county from the member's employment . . . ." Ky. Rev. Stat. § 78.852(1). Kentucky breached that "inviolable contract" and is liable for the damages that breach caused Plaintiffs. I would affirm the judgment of the district court in its entirety, and dissent from the portion of the majority opinion partially vacating and remanding the district court's damages awards.